JOHN MARTIN LUMBER CO. *vs.* WILLIAM E. HOWARD *et al.*

Submitted on briefs April 12, 1892. Decided May 3, 1892.

**Mechanic's Lien—Facts Examined.**—*Held* that upon the findings of fact plaintiff and other claimants were entitled, under the provisions of Laws 1889, ch. 200, § 5, (the mechanic's lien law,) to a lien upon the interests of the owner in and to the land on which a building had been erected.

Appeal by defendants, William E. Howard, Henrietta J. Howard, his wife, Winnie L. Taylor, Chester R. Smith, and Oscar L. Taylor, from an order of the District Court of Ramsey County, *Kerr,* J., made September 19, 1891, refusing their application for a new trial.

The plaintiff, the John Martin Lumber Company, on October 16, 1890, and on other days between that day and December 1, 1890, sold and delivered to Fred J. Nicholson lumber to be used in building a house and barn on lots twenty-one (21) and twenty-two (22) in block thirteen (13) in Butterfield's Syndicate Addition No. 1 to St. Paul. The company made and filed a statement for a lien pursuant to Laws 1889, ch. 200, and brought this action to foreclose it, making all parties interested defendants.

William E. Howard owned the lots, and on August 19, 1890, employed Chester R. Smith and Oscar E. Taylor to sell them. On the same day he and wife, without consideration, made a mortgage on one of the lots to Taylor's sister, Winnie L. Taylor, a nonresident, for $1,425, and interest due on or before November 1, 1890. She knew nothing of the mortgage, paid no consideration for it, and had in fact no interest in it, but it was delivered to her brother, and he put it on record, and then retained it in his possession, with Howard's assent. Smith & Taylor were real-estate agents, but had no written authority from Howard to sell the lots or make a contract of sale or sign Howard's name. They on the same day gave Nicholson a written contract of sale of this lot, signing Howard's name to it, "by Smith & Taylor, Agents." Nicholson paid down nothing and had no pecuniary responsibility, but by the contract he assumed to

pay the mortgage and one dollar for the lot; and he orally agreed to build a house on the lot. The lot was worth no more than the amount of the mortgage. Nicholson then commenced to build, buying materials of plaintiff and others, and employing mechanics on credit. He failed to pay the bills, and in December, 1890, abandoned the property, and Howard took possession of it for nonpayment of the mortgage. Meantime Howard and wife, on October 10, 1890, mortgaged the other lot, without consideration, to Miss Taylor, for $1,340, and interest due on or before five years. She paid nothing, and knew nothing about it, and had no interest in it. This mortgage was also delivered to her brother and recorded, and he retained it in his possession, with Howard's assent. On the same day the agents sold this lot also to Nicholson, giving him another contract, signed with Howard's name in the same way. By this contract Nicholson assumed to pay this mortgage and $50 cash, and orally agreed to build a barn on this lot. It was worth no more than the amount of the mortgage. He commenced at once to build the barn, and bought of plaintiff and others material for it, and employed workmen upon it, on credit. He failed to pay the bills; and abandoned this lot also, and Howard took possession.

Howard and wife, the real-estate agents, and Miss Taylor, were all made defendants in this action. They all defended, claiming the mortgages to be prior *bona fide* incumbrances, and that Howard's interest in the lots was not affected by the liens for labor or materials. The action was tried May 18, 1891. The court found that all necessary parties had been joined and duly served with summons, and also found the amount due upon each of the fourteen liens filed against the property, and found that the mortgages to Winnie L. Taylor were made for the purpose of obtaining priority over anticipated liens for material and labor, and were held by Howard's agent for his benefit, and to secure to him the purchase price of the lots, and that he and his agents knew the facts above stated as they transpired. As conclusions of law the court found that the claims for labor and material were just liens upon the lots, and superior to any claim arising under or by reason of the mortgages, or either of them, and or-

dered the property sold to pay the amount found due on the liens, with interest and costs.

*C. D. & Thos. D. O'Brien,* for appellants.

The exceptions in Laws 1889, ch. 200, § 5, are applicable to the appellants Howard and Taylor in this case. One of them is unquestionably a *bona fide* prior mortgagee, incumbrancer, or lienor; inasmuch as in one of them exists the vendor's lien for this property, whether the same be evidenced by the mortgages referred to or not; for the fact remains that the owner of this property has not been paid anything for his land, and that the vendee by default has lost his interest in it. The lien cannot be claimed under the provisions of section one, (1,) for no contract, expressed or implied, existed between the lienors and the appellants. No lien can be claimed under the provisions of section four, (4,) because there is no provision in the contract of sale, contingent upon or providing for the making of improvements upon the property.

There was no adequate proof of an agreement that Nicholson should build on the lots. The written contracts contained no stipulation to that effect, and parol evidence to vary them was inadmissible. There was no evidence that the improvements by Nicholson were done at the request, or with the consent or knowledge, or for the benefit, of the defendant Howard. This argument is made with full knowledge of the holding of this court in the case of *Hill* v. *Gill*, 40 Minn. 441.

Howard could not require Nicholson to make the improvements which he made, or any others; he could not prevent his making them while in possession of the property if he saw fit to do so. It was a transaction on the part of Nicholson and his material men over which the vendor had no control. It is no answer to this argument to assert that the material men and mechanics were in ignorance of the condition of Nicholson's title. Upon them, as upon everybody else, is imposed the duty of ordinary care. The record title of this property was in Howard, subject to the mortgages to Winnie L. Taylor. Nicholson had no evidence of title save that of possession. These people, as well as the owner of the property, are presumed and re-

quired to know the law, and the slightest inquiry would have disclosed to them the condition of affairs. *Laird* v. *Moonan,* 32 Minn. 358; *O'Neil* v. *St. Olaf's School,* 26 Minn. 329; *King* v. *Smith,* 42 Minn. 286.

There is no evidence whatever of any preconcert or agreement between Nicholson and Howard or anybody else to perpetrate a fraud. If the evidence in this case warranted the conclusion that there was a combination or an understanding between Howard and Nicholson that Nicholson should improve this property for the purpose of adding to its value, the owner's interest could not be reached in a proceeding of this kind. The action should in that case be the common-law action for conspiracy and fraud, and the pleadings should contain proper allegations for an action of that kind. No mere resulting facts or conditions can ever be a badge of fraud or competent evidence of a conspiracy, both of which require an original intention by the parties to effect the wrongful object, and subsequent acts done for the purposes of forwarding the conspiracy.

*Warren H. Mead,* for respondent.

The contracts given Nicholson are void under the statute of frauds. 1878 G. S. ch. 41, § 12, as amended by Laws 1887, ch. 26; *Taylor* v. *Allen,* 40 Minn. 433; *Clampet* v. *Bells,* 39 Minn. 272.

These contracts were evidently made to obtain improvements for the benefit of Howard. Nicholson had no more than an oral contract, and erecting the buildings was part of the oral arrangement. *Althen* v. *Tarbox,* 48 Minn. 18.

Badges of fraud are apparent. Here was a pretended sale to an irresponsible man, without a dollar paid down; a sale for the full value of the lots on thirty and sixty days' time, Howard knowing well that such a man would default, and the improvements fall to him. The pretense of mortgages to an absent sister of the agent without consideration, and without her knowledge or consent, is transparent. When an owner attempts to defeat the operation of the mechanic's lien law, by not putting the agreement to build in the contract, and when he obtains the erection of buildings by a scheme for his own

benefit, the court should consider such an owner not a *bona fide* lienor as against mechanics' liens, and should hold his interests subject thereto.

COLLINS, J.   Action to foreclose a lien for materials furnished and used in the erection of a house and barn on contiguous lots, twenty-one (21) and twenty-two (22,) in block thirteen (13,) in one of the additions to St. Paul.

The salient facts were as follows: On August 19, 1890, defendant W. E. Howard was the owner of these lots, and had verbally listed them for sale with the real-estate firm of Smith & Taylor, also made defendants.   On that day this firm executed and delivered to defendant Nicholson a writing, signed "W. E. Howard, by Smith & Taylor, Agents," in which it was recited that Nicholson had purchased lot twenty-two (22) for the sum of $1,425, the terms of sale simply being that he should assume a mortgage on the lot for that sum, due November 19, 1890.   The receipt of one dollar as earnest money and part payment was also acknowledged in the writing, and the purchaser was given thirty days in which to examine the abstract of title, and accept a deed.   If he failed so to do, the vendor was authorized, at his option, to terminate the agreement; time being declared of its essence.   While these agents, it was stated, believed their authority to execute the writing ample, it was stipulated that they did not so warrant, and were not to be held liable in damages in case such authority did not exist.   At this time there was no incumbrance upon the lot, but as a part of the transaction the owner, Howard, his wife joining, mortgaged it to defendant, Winnie L. Taylor, to secure his promissory note, maturing November 19, 1890, for the sum of $1,425, of even date with the writing delivered to Nicholson.   The mortgagee named was a sister of one member of this real-estate firm, a nonresident, never saw the mortgage, and had no interest whatsoever in it.   There was no consideration for its execution, which execution was suggested by the real-estate dealers to whom it was delivered.   By them it was placed on record August 20th, and afterwards, with the note, remained in their possession for the exclusive

benefit of defendant W. E. Howard. It was made as and for the mortgage to be assumed by Nicholson, mentioned in the writing, and in amount was for the full value of the premises. Its office, purpose, and manifest character will be referred to hereafter. Although Nicholson did not positively agree to build upon the lot, there was an understanding between the parties that he should do so, and he went into immediate possession thereof, claiming ownership, and remained in possession until after plaintiff's materials were used in the construction of the buildings before mentioned, when defendant W. E. Howard exercised his option, and terminated the written agreement.

On October 10th there was a transaction between these parties in respect to the other lot,—No. twenty-one (21)—of precisely the same peculiar nature, the counterpart in all its details of that of August 19th, save that the amount of the agreed price and of the mortgage to be assumed, and of the incumbrance actually placed on the lot, was fixed at $1,350, payable on or before five years. Neither of these instruments was put on record, and what has been stated concerning the possession of lot twenty-two (22) by Nicholson for a short time, and the understanding between the parties as to his building upon the lot, is pertinent, and applicable to lot twenty-one as well, the barn being placed thereon, while the house was built on lot twenty-two, (22.) He never paid any part of the purchase price of either lot, not even the dollar mentioned in each of the writings; and, it would seem, abandoned the project of completing the buildings when the mechanics refused to work longer without receiving compensation, and no more materials could be had upon credit. Then Howard, evidently without opposition from Nicholson, and with great alacrity, took possession of the improved property, asserting that all lien claims were inferior to his rights as an unpaid vendor. The trial court found as a fact that the mortgages were made as and for the mortgages referred to in the writings as those to be assumed by the vendee, and were intended to secure to the vendor the agreed value and purchase price of the lots in an indirect manner. It also found that they were made and recorded for the express purpose of claiming the amounts represented to be secured thereby as liens on

the property prior to any liens which might be made or filed by material men or mechanics for materials furnished or labor performed for Nicholson when making the contemplated improvements. It further found that at the commencement, and while the buildings were being constructed, defendant W. E. Howard and his agents, Smith & Taylor, had full notice and knowledge of what was being done in the way of building. Neither of these findings has been challenged by appellants as unsupported by the evidence, for it would have been useless to do so; but the contention is that the conclusion of law which directed the entry of judgment making the mortgages secondary and subservient to the lien claims of plaintiff and fourteen other parties, who, under the statute, had been brought into the action as defendants, all of said claims having been duly proven and established, was erroneous, and not justified by the facts as found.

At this time it may not be amiss to notice that, as Taylor & Smith had not been authorized in writing by their principal to sign any contract for the sale of real property, the pretended agreements executed by them were invalid and nonenforceable under the statute of frauds, 1878 G. S. ch. 41, § 12, as amended by Laws 1887, ch. 26; § 1. And we think that an examination of these peculiarly worded instruments by any person in possession of the surroundings of the transaction would impress him with the full belief that they were designedly of this invalid and nonenforceable character. To speak more plainly, that they were a part of the plan to make the pretended mortgages prior and superior to any liens which might thereafter be filed by mechanics or material men against the premises. There could have been but one object in the execution and putting upon record of these alleged mortgages, given to secure a fictitious debt, in which the real owner of the property masqueraded as a mortgagor, while the person named as mortgagee was ignorant of the existence of the purported securities, or of the transaction in which they so prominently figured, and had not the remotest interest in either. It is hardly necessary to say that the mortgagee named was not a *bona fide* mortgagee, and it is obvious that the office and purpose of these instruments was to aid and promote a very transparent device or scheme, through which it was hoped and expected that the statute

which gives mechanics and material men liens for the value of their labor or merchandise might be evaded in so far as to postpone their claims to one made by Howard for a sum said to have been the agreed purchase price of the lots, and by the trial court found to have been their full value.

It is claimed by counsel for respondent corporation that by the evidence it was conclusively established that the buildings were in fact erected by Howard, the real owner of the lots, and that, in any event, they were erected at his instance, so that under the provisions of Laws 1889, ch. 200, § 1,—independently of the terms of § 5,—his client's rights are assured. We need not consider this claim. In § 5 it is provided that, where improvements have been made upon real property with the knowledge of the owner of the same or of any person having or claiming an interest therein, otherwise than as a *bona fide* prior mortgagee, incumbrancer, or lienor, they shall be held to have been made at the instance of the owner or person, unless within five days after obtaining this knowledge he shall make and serve a specified notice. The right to a lien for the value of labor and materials when the same have been performed or furnished "at the instance of" the owner of the land is conferred by the express terms found in § 1. By the provisions of § 5 there has been established a rule of evidence applicable to this class of cases in the nature of an equitable estoppel; and under which all interested parties, with certain exceptions, are required to speak out when advised of the fact that improvements are being made upon real property. If, with knowledge of the fact, they remain silent, acquiescence and consent to the making of the improvements and to the consequences in case the labor and materials are not paid for are conclusively presumed under the statute. In this case, putting aside the very many suggestive circumstances which were shown in evidence, the appellant Howard was not only informed of the erection of the house and barn as the materials were furnished and the work progressed, but knew, when his agents put Nicholson in possession as the ostensible owner of the lots, what he intended and expected to do in the way of building. At no time did he object. In fact, he complained at the delay in making the improvements. His interest in the lots, whatever it may

be under the complications, for which he and his agents are alone responsible, must be adjudged subject and secondary to plaintiff's claim for a lien.

In conclusion we will say that, whatever implied limitations there may be to the general language of § 5, it is clear that it applies to all cases where the owner, knowing that improvements are being made on his property, keeps silent, when fairness and common honesty require him to speak. It is very apparent that this is such a case.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 34.)