2004 SD 51

**DUFFIELD CONSTRUCTION, INC., Plaintiff and Appellee,**

v.

**Karen K. BALDWIN and Gerald M. Baldwin, Defendants and Appellants.**

**No. 22843.**

Supreme Court of South Dakota.

Argued Nov. 19, 2003.

Decided April 14, 2004.

478

field Construction (Duffield) performed environmental remediation on a leaky underground gasoline storage tank located on the property, installed an upgraded underground gasoline storage tank and made further improvements. WACO failed to pay for Duffield's services and Duffield filed a mechanic's lien on the property. Baldwins disputed the validity of the mechanic's lien. The trial court determined Duffield was entitled to foreclose the mechanic's lien, entered judgment in its favor and also awarded Duffield attorney's fees. Baldwins appeal and we affirm.

## FACTS AND PROCEDURE

[¶ 2.] This case involves property located in Rapid City, South Dakota. The property is owned by Baldwins and located directly across from the South Dakota School of Mines and Technology. Baldwins purchased this property in 1983 and developed it specifically for lease to WACO for use as a Trailside gas station and convenience store. WACO operated this Trailside store under an unrecorded lease. The lease obligated Baldwins to undertake repairs on the property but WACO was also authorized to make necessary repairs. After seventeen years in use, this property was run-down and the store parking lot was so bad that customers were tripping on chunks of concrete. The store manager also discovered that an underground gasoline storage tank in use since 1983 had been leaking. The store manager contacted Duffield to perform the required environmental remediation, install an upgraded underground storage tank and other fixtures and make necessary repairs. Although Trailside's store manager had worked for the company for ten years, she did not know that her employer did not own the property. Duffield entered into a contract with Trailside, assuming that Trailside owned the property. Under the

Steven J. Oberg of Lynn, Jackson, Shultz & Lebrun, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Pamela Snyder–Varns, James S. Nelson and Robert C. Scremin of Gunderson, Palmer, Goodsell & Nelson, Rapid City, South Dakota, Attorneys for defendants and appellants.

TUCKER, Circuit Judge.

[¶ 1.] Karen and Gerald Baldwin (Baldwins) owned property leased to Wyoming Alaska Corporation (WACO) for use as a gas station and convenience store. Duf-

supervision of the State of South Dakota, Duffield cleaned up the site, installed the upgraded tank and other fixtures which were designed to satisfy current standards and prevent future contamination and poured a new concrete lot.

[¶ 3.] Trailside paid only a small portion of Duffield's bill. Duffield filed a mechanic's lien against the property and WACO filed bankruptcy. Baldwins disputed Duffield's mechanic's lien on their property. In this lawsuit, Baldwins conceded that Duffield's work was necessary and beneficial to the property but claimed that the work constituted a repair performed at the instance of their lessee. They admitted that they had knowledge of the leak and of the plan to upgrade the underground storage tank but claimed that they did not know that any improvements were being made.

[¶ 4.] The trial court found that Duffield had made improvements to Baldwins' property. It also determined that Baldwins knew that these improvements were being made before they were completed. The trial court specifically concluded Baldwins had misrepresented facts about what they knew and when they knew it and therefore rejected his testimony concerning the extent of his knowledge about the project as not credible.

[¶ 5.] The trial court held that Baldwins had authorized the improvements to their property or were deemed to have authorized the improvements by failing to give notice that the work was not being undertaken at their instance. It also determined that Baldwins had been unjustly enriched as a result of Duffield's improvements to their property and that Duffield was entitled to foreclose its lien. Judgment was entered for $166,149, plus interest of $37,736.08 for a total award of $203,885.08 and Duffield was also awarded attorney's fees.

## STANDARD OF REVIEW

[¶ 6.] The foreclosure of a mechanic's lien and a claim of unjust enrichment are actions in equity. *Action Mech. v. Deadwood Historic Pres. Comm'n*, 2002 SD 121, ¶ 14, 652 N.W.2d 742, 748. This Court reviews such decisions to determine whether the trial court abused its discretion, and will not disturb such decisions unless, "in view of the law and circumstances of a particular case, no judicial mind could reasonably have reached such a conclusion." *Id.*

## ANALYSIS

### ISSUE ONE

[¶ 7.] **Whether the trial court abused its discretion in determining that Duffield was entitled to foreclose the mechanic's lien.**

[¶ 8.] The purpose of the mechanic's lien law is to provide security or protection to persons who improve the property of others by furnishing materials and labor. *Action Mech.*, 2002 SD 121, ¶ 17, 652 N.W.2d at 749. Those who "furnish skill, labor, services ... or materials for improvements, development, or operation of property" at the request of the owner, a "duly authorized agent or representative of the owner" or "any contractor or subcontractor" are entitled to such a lien. SDCL 44-9-1. Even if a landowner has not actually authorized an improvement, his authority will be inferred if he knew about an improvement and did not disclaim liability. The legislature has provided that:

> When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior encumbrancers, or lienors shall be deemed to have authorized such improvements, insofar as

to subject their interests to the liens therefor; provided that as against a lessor no lien is given for repairs made by or at the instance of his lessee.

SDCL 44–9–2. The mechanic's lien law thereby operates to protect mechanics and materialmen for their authorized improvements.

▪ [¶ 9.] Conversely, the law provides protection to landowners when liens arise from unauthorized and unwanted improvements. In that regard, SDCL 44–9–4 provides:

> Any person who has not authorized the improvements may protect his interests from such liens by serving upon the person doing the work or otherwise contributing to such improvement, within five days after knowledge thereof, written notice that the improvement is not being made at his instance, or by posting like notice, and keeping the same posted, in a conspicuous place on the premises.

This Court has held that an owner's failure to disclaim responsibility in the manner provided by the statute "ha[s] the same legal effect as if they had expressly authorized the improvement." *See Stoneberger v. Davis*, 74 S.D. 300, 51 N.W.2d 873, 876–77 (S.D.1952)(construing identical language found in SDCL 44–9–4 from a prior statute). In *Amert Constr. Co. v. Spielman*, 331 N.W.2d 307, 310 (S.D.1983), the Court reiterated that:

> Interested persons are required to take action rather than remain silent when notified that unauthorized improvements are being made on their real estate or they will be equitably estopped from attacking a mechanic's lien which attaches thereto.

The law "allows owners to protect themselves against the filing of mechanic's liens by posting notices of nonliability." *Action*

*Mech.*, 2002 SD 121, ¶ 17, 652 N.W.2d at 749.

▪ [¶ 10.] Duffield's work meets the definition of an improvement as previously set forth by this Court. In *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, 603 N.W.2d 202, the Court discussed the meaning of "improvement" contained in SDCL 44–9–3 and quoted the following definition with approval:

> The phrase "permanent improvements" means *something done to or put on* the land or, in other words, something the occupant cannot remove or carry away with him, ... because it has become physically impossible to separate it from the land ... [Ordinary repairs made to meet the usual wear and tear of premises, or changes that merely gratify the taste and contribute to the convenience of the occupant are not considered permanent improvements.]

*Id.* ¶ 13 (quoting 41 AmJur2d *Improvements* § 21) (emphasis added). This Court has also cited the following definition of "improvement":

> An improvement in construction parlance is ordinarily defined as "a permanent addition or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs[.]"

*Pete Lien & Sons, Inc. v. City of Pierre*, 1998 SD 38, ¶ 9, 577 N.W.2d 330, 331 (quoting Webster's Third International Dictionary 1138 (1976)). Duffield's construction project clearly constituted an improvement to Baldwins' property.

▪▪ [¶ 11.] The trial court's finding that Baldwins had notice and knowledge that improvements were being made to the property prior to completion of the work was supported by the record. *Compare Thorson v. Maxwell Hardware Co.*, 82

S.D. 385, 146 N.W.2d 739, 742 (1966)(affirming a finding that the property owner did *not* have knowledge of improvements being made on his property). The trial court also found as follows:

> Gerald Baldwin's testimony regarding his lack of knowledge of the improvements being made at the Birch Avenue property is not credible.

"It is not this Court's role to re-examine a trial court's credibility determination." *Stratmeyer v. Engberg*, 2002 SD 91, ¶ 22, 649 N.W.2d 921, 927. Baldwin's trial testimony stood in sharp contrast to his prior representations. We note that after initially representing to the court that he had never spoken with the lessee about the work until after it had been completed, Baldwin admitted at trial, "I had one conversation before the work was done about what was going to be done, yes." The prior representations concerning the time of Baldwins' conversation with the lessee were specifically noted by the trial court and the trial court characterized this trial testimony as "a critical and pivotal circumstance." The trial court was not bound to accept Baldwin's testimony about what he knew and when he knew it in light of these conflicting statements and we defer to its credibility determination.

[¶ 12.] Baldwin admitted seeing the new tank sitting on the property before the work began. He assumed that an old tank had leaked or that the tank was being upgraded. According to Baldwin, the parties contemplated that this upgraded tank would remain with the property. Therefore, Baldwin had notice and knowledge that upgrades and permanent improvements were being made to their property even before he spoke with the lessee. Baldwin also knew that new concrete would be installed when the underground storage tank was upgraded. Additionally, after visiting with their lessee, Baldwin was aware that the underground contamination would be dug out and removed.

[¶ 13.] Although Baldwins claim that they did not watch the work being performed and did not know that Duffield was doing the work, the validity of a lien does not depend on the owner's knowledge of each and every detail about the improvements being made to his property.

> Various circumstances have been held sufficient by the courts to indicate that the owner of the property improved or repaired had, either indirectly or through an agent, actual knowledge within the meaning of such statutes. Among these are letters from the landowner's agent, written agreements of liability, oral notification to vendor that improvements were being made, and the like. This knowledge need not, however, be actual; it may be constructive.

53 AmJur2d *Mechanic's Liens* § 170. As this Court has explained:

> The object of such law is to establish a rule of evidence in the nature of an equitable estoppel under which all interested persons 'are required to speak out when advised of the fact that improvements are being made upon real property. If, with knowledge of the fact, they remain silent, acquiescence and consent to the making of the improvements and to the consequences in case the labor and materials are not paid for are conclusively presumed.' *John Martin Lumber Co. v. Howard*, 49 Minn. 404, 52 N.W. 34. In accord with this basic principle *our statute applies to an owner who acquires notice or knowledge of an unauthorized improvement* while work is still in progress.

*Thorson*, 82 S.D. 385, 146 N.W.2d at 742. (emphasis added). Even if an owner does not know all the details, once he has acquired notice or knowledge that improve-

ments are being made to his property, he has a duty to act to avoid liability.

■■■ [¶ 14.] Karen Baldwin admitted that Gerald Baldwin had told her about seeing a new tank at the store. The Baldwins admitted that at all relevant times Gerald Baldwin was an agent for Karen Baldwin. A principal and agent are deemed as a matter of law to have notice of whatever the other has notice of and are expected to communicate in the exercise of ordinary care and diligence. SDCL 59–6–5. This rule applies even if they have not in fact shared their knowledge. *See Aetna Life Ins. Co. v. McElvain,* 363 N.W.2d 186, 189 (S.D.1985)(citing 3 AmJur2d *Agency* § 273 (1962)).

[¶ 15.] After listening to the testimony, observing the witnesses, and weighing all of the evidence, the trial court found that Baldwin was not credible in his testimony regarding the extent of his knowledge about the improvements that were made. As a result, the trial court found that Baldwins had failed to disclaim liability, despite notice and knowledge that improvements were being made to their property. Therefore, the trial court concluded that Duffield was entitled to maintain and foreclose upon its lien. On this record, the trial court did not abuse its discretion.

## ISSUE TWO

[¶ 16.] **Whether the trial court abused its discretion in awarding Duffield attorney's fees.**

■■■ [¶ 17.] Baldwins assert that the trial court erred in awarding Duffield's attorney's fees of $32,573.50 and costs of $2,744.23 because they presented a meritorious defense. In support of this argument, Baldwins point to the fact that the trial court found genuine issues of material fact in denying summary judgment. How-ever, the denial of Baldwins' own motion for summary judgment does not establish the merit of their defense. Baldwins cite no legal authority to support the proposition that the existence of issues of fact or the merit of the proffered defense precludes an award of attorney's fees. Their failure to cite such authority constitutes a waiver of this issue on appeal. *Hart v. Miller,* 2000 SD 53, ¶ 45, 609 N.W.2d 138, 148.

■■■ [¶ 18.] Even if they had not waived this issue, they have nevertheless failed to establish that the trial court abused its discretion. SDCL 44–9–42 specifically authorizes an award of attorney's fees in this situation. The trial court prepared a memorandum decision on this issue and entered detailed findings of fact and conclusions of law in support of the award.

[¶ 19.] Baldwins claim that they should not be punished by an award of such fees. However, nothing in SDCL 44–9–42 suggests that an award of attorney's fees is punitive or must be based on a conclusion that punishment is warranted. Rather, in awarding attorney's fees the trial court noted the inconsistent legal positions taken by Baldwins throughout this litigation. The trial court also found that Duffield's attorney's fees were reasonable, Duffield had not engaged in any unnecessary discovery, and that Duffield had prepared and presented its case efficiently and economically.

[¶ 20.] Contrary to Baldwins' assertion, Duffield did not seek any attorney's fees for services not directly related to the claims against them. In fact, Duffield's counsel redacted several thousand dollars of attorney's fees from Duffield's request, recognizing that those fees had arisen out of an attempt to ascertain whether there were other sources of possible recovery. On this record, the trial court did not

abuse its discretion in awarding Duffield attorney's fees.

APPELLATE ATTORNEY FEES

[¶ 21.] Duffield has filed a motion for appellee attorney fees in the amount of $11,232.50 incurred in connection with the appeal in this matter. The motion is accompanied by an itemized and verified statement of costs incurred from legal services rendered in accord with SDCL 15–26A–87.3. SDCL 44–9–42 specifically authorizes an award of attorney fees in this instance. Therefore, under these circumstances we grant Duffield's request and award appellate attorney fees in the amount of $11,232.50.

[¶ 22.] In light of our determination on the issues above, it is not necessary to address the remaining issues presented by the parties. The judgment of the trial court is affirmed.

[¶ 23.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

[¶ 24.] TUCKER, Circuit Judge for SABERS, Justice, disqualified.