#26953-a-JKK
**2014 S.D. 86**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| TERRY LEONHARDT and CINDY LEONHARDT, | Plaintiffs and Appellants, |
| v. | |
| DELBERT LEONHARDT, | Defendant and Appellee, |
| and | |
| MATTHEW OSWALD, | Intervenor and Appellee. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JACK R. VON WALD
Retired Judge

\* \* \* \*

| | |
|---|---|
| ZACHARY W. PETERSON RICHARD L. RUSSMAN of Richardson, Wyly, Wise, Sauck & Hieb, LLP Aberdeen, South Dakota | Attorneys for plaintiffs and appellants. |
| TIMOTHY J. VANDER HEIDE of Barker Wilson Law Firm, LLP Belle Fourche, South Dakota | Attorneys for defendant and appellee. |
| JULIE M. DVORAK of Siegel, Barnett & Schutz, LLP Aberdeen, South Dakota | Attorneys for intervenor and appellee. |

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 25, 2014
OPINION FILED **12/10/14**

KONENKAMP, Justice

[¶1.]     In this dispute between family members over agricultural land, the circuit court concluded that neither an oral agreement for a lifetime lease nor a right of first refusal existed.

## Background

[¶2.]     In 2010, Terry and Cindy Leonhardt (the Leonhardts) brought suit against Terry's father, Delbert Leonhardt, for specific performance of an oral lease and right of first refusal.  The Leonhardts alleged that they had entered into an oral lease with Delbert in 1988, whereby they would have the right to lease Delbert's farmland, approximately one thousand acres, during the lifetime of Delbert and his then-wife Ellen.  The Leonhardts further claimed that Delbert orally promised them a right of first refusal to purchase the farmland after he and Ellen died.  Delbert breached these agreements in 2010, the Leonhardts claimed, when he gave Terry notice of his intent to terminate the Leonhardts' lease.

[¶3.]     Terry's nephew and Delbert's grandson, Matthew Oswald, intervened in the suit because he claimed to have a written lease agreement with Delbert on the same property.  Matthew also brought a counterclaim against the Leonhardts for intentional interference with a contractual relationship.  Delbert moved for summary judgment and Matthew joined, asserting that the alleged oral lease and right of first refusal were invalid under SDCL 43-32-2, which limits lease agreements concerning agricultural land to no more than 20 years.

[¶4.]     At the summary judgment hearing, the circuit court brought up the issue of the statute of frauds.  *See* SDCL 53-8-2 (a lease agreement for a period

longer than one year is not enforceable unless in writing). In response, the Leonhardts insisted that neither Delbert nor Matthew had raised the statute of frauds as a defense. They also argued that promissory estoppel and part performance precluded the application of the statute of frauds. The circuit court disagreed and granted Delbert and Matthew summary judgment, concluding that the lease was invalid under the statute of frauds.

[¶5.] On appeal, the Leonhardts argued that the circuit court erred when it failed to give them notice of its intent to rely on a different legal theory than that advanced by Delbert and Matthew in support of the motion for summary judgment. *Leonhardt v. Leonhardt*, 2012 S.D. 71, 822 N.W.2d 714. Had they been given adequate notice of the statute of frauds issue, the Leonhardts contended, they could have presented evidence relevant to their defenses of promissory estoppel and part performance. We agreed and reversed the circuit court's summary judgment order, ruling that the Leonhardts "have shown that they were prejudiced by the circuit court's failure to provide them with notice that it would consider the statute of frauds during the summary judgment hearing." *Id.* ¶ 17.

[¶6.] On remand, the circuit court held a bench trial. Testifying were Terry, Cindy, Delbert, Ellen, Matthew, Thomas Leonhardt (Terry's brother), Suzi Oswald (Terry's sister and Matthew's mother), and Betsy Oleson (Terry's sister). Terry explained the history of the parties' farming relationship. In the fall of 1988, he considered attending Western Dakota Vocational Technical Institute in Rapid City, South Dakota. His father, however, persuaded him to stay and farm on the promise that Delbert would let Terry lease the farm during Delbert's and Ellen's lives, with

a right to purchase the land upon their deaths. Terry agreed, and he and Delbert operated the farm for the next several years as a partnership, whereby Terry paid half of all the bills and received one-third of the profits.

[¶7.]     According to Terry, the terms of the oral lifetime lease agreement changed twice, once in 1992, and again in 2001. In 1992, after Delbert turned 62 and became semi-retired, the parties agreed that Terry would receive two-thirds of the profits and be responsible for all the expenses associated with the farming operation. At some point after this agreement, Terry took out a life insurance policy on Delbert in consideration for Delbert's promise that Terry would have the right of first refusal to purchase the farm upon the deaths of Delbert and Ellen. In 2001, Terry asked Delbert to agree to accept cash rent in lieu of profit sharing. Delbert agreed and from that point forward (until Delbert terminated the lease), Terry leased Delbert's land on a cash-rent basis.

[¶8.]     When Terry was cross-examined, counsel for Delbert questioned him on testimony Terry earlier gave during Delbert and Ellen's divorce trial. Terry agreed that in his testimony about his interest in this land, he never claimed to have had a lifetime lease or a right of first refusal. He also agreed that when Delbert told Terry he wanted to lease 80 acres to Matthew, Terry made no claim that Delbert could not lease the land to Matthew because of a lifetime lease. Instead, Terry said he told Delbert that he was obligated under a two-year lease on the property. Terry confirmed that he also told Delbert and Ellen that he would quit farming and leave if Delbert decided to lease the land to Matthew. Terry testified about the history of a strained relationship he had with Delbert and

Matthew, which began in 2007, near the time when Terry was laid up with a back injury.

[¶9.]     Terry recited the expenditures he made in consideration of the lifetime lease and right of first refusal. He said that he improved buildings on the homestead, but on cross-examination, he explained that when the improvements were made, they owned the land and home and when they did not own the home, they lived in it rent free. In 2000 and 2001, Delbert and Ellen gifted the bigger homestead and 40 acres to the Leonhardts. Terry testified that he purchased and installed a grain bin and purchased nearly $1,500,000 in equipment, but on cross-examination, he agreed that the bin was installed on land they owned and that Terry continued to own the equipment he purchased, which was used for farming Delbert's land, his own land, and land he rented from others. Finally, although Terry put in place fertilization zones on the property he rented from Delbert, he agreed that any increase in yield he realized from those zones did not benefit Delbert.

[¶10.]     Ellen also testified. She said that Delbert made an offer to Terry in the late 1980s to take over the farm. She explained that Delbert and Terry had a good relationship until Matthew got himself between them. She said that in 2005, Delbert's attitude changed; he concerned himself only with Matthew. Matthew lived rent free with Delbert and Ellen. According to Ellen, Delbert pressured her to sign over ownership of certain buildings to Matthew, wanted them to move out of their home and give it to Matthew, and wanted Matthew to get the farm. Ellen had had enough and obtained a divorce. Thereafter, she entered into a 20-year written

lease agreement with Terry to allow him to lease her portion of the property. She said that Terry would have a right of first refusal to purchase her property upon her death.

[¶11.]      In his testimony, Delbert agreed that he and Terry operated the farm on a profit-sharing basis from 1989 to 2001, and a cash-rent basis beginning in 2001. But he denied that he orally promised to lease the farmland to the Leonhardts for life or that he specifically agreed that Terry would have a right of first refusal. Rather, he said that the lease agreement was something he and Terry discussed annually. He could not recall Terry ever requesting a lifetime lease.

[¶12.]      In its memorandum decision and findings of fact and conclusions of law, the circuit court found that based on Terry's testimony during the divorce proceedings, Terry did not believe at that time that he had a lifetime lease. The court further found that "[p]rior to 2011 when this lawsuit was filed, both Delbert and Ellen behaved as though they retained the right to deal with their land as they saw fit, without regard to any lifetime lease agreement or right of first refusal in favor of Terry." The court found no credible evidence that the Leonhardts possessed a lifetime lease or right of first refusal. It ruled that "[a]ny improvements which were made to the homesteads were made to property which Delbert does not own." And "[a]ny purchases of machinery and equipment were made for Terry's own benefit and for Terry's own purposes." The court found that the fences Terry installed and his fertilization zones were also for his own benefit. Therefore, the court concluded that the Leonhardts failed to prove by clear and substantial

evidence that there was a meeting of the minds on the oral lifetime lease agreement or the right of first refusal.

[¶13.]     Because there was no lifetime lease agreement or right of first refusal, the court ruled that there was nothing to enforce by specific performance. But even if a lifetime lease and right of first refusal existed, the court concluded that any such oral agreements would be barred by the statute of frauds. *See* SDCL 53-8-2. Even if the statute of frauds could be avoided by evidence of part performance and promissory estoppel, the court ruled that the Leonhardts failed to prove by credible evidence that their alleged partial performance was related to the contract and that they suffered any detriment in their reliance on a lifetime lease or right of first refusal. And even if the lifetime lease or right of first refusal existed, it violated the provisions of SDCL 43-32-2 and would therefore be void. Finally, the court concluded that any right of first refusal was not severable from the alleged oral lifetime lease agreement "because the parties' performances were not separable into corresponding pairs of part performance and the parts of each pair were not regarded as agreed equivalents[.]"

[¶14.]     The Leonhardts appeal, and we address their claim that they established the existence of a material issue of fact on whether the statute of frauds could be avoided on the basis of part performance or promissory estoppel.*

---

\*     The Leonhardts assert several other issues, which we need not address. On their first issue — whether the court abused its discretion in considering evidence from the divorce trial — the Leonhardts did not cite any authority in support, which waives the issue. *See Duffield Constr., Inc. v. Baldwin*, 2004 S.D. 51, ¶ 17, 679 N.W.2d 477, 483. We need not address their claim that the right of first refusal is severable from the lease agreement, because no

(continued . . .)

## Analysis and Decision

[¶15.] The Leonhardts argue that they established the existence of a material issue of fact in dispute on avoiding the statute of frauds. This case was tried to the court, and the court considered the material issues of fact in dispute and entered findings of fact and conclusions of law. Thus, our review is whether the court clearly erred when it weighed the material issues of fact and ruled that the Leonhardts failed to meet their burden of proof that a lifetime lease and right of first refusal existed. *See* SDCL 15-6-52(a); *Lien v. Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d 816, 822. We presume the court's findings of fact are correct and "defer to those findings unless the evidence clearly preponderates against them." *City of Deadwood v. Summit, Inc.*, 2000 S.D. 29, ¶ 9, 607 N.W.2d 22, 25 (quoting *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D. 1994). We further defer to the court's "firsthand perception of the witnesses and the significance the [court] gave to their testimony." *Zepeda v. Zepeda*, 2001 S.D. 101, ¶ 19, 632 N.W.2d 48, 55. Conclusions of law, however, are reviewed de novo, with no deference to the court's ruling. *City of Deadwood*, 2000 S.D. 29, ¶ 9, 607 N.W.2d at 25.

[¶16.] The Leonhardts contend that the court erred because it "ignored significant factual background in favor of a few snippets from unrelated proceedings," and because they proved by "clear and satisfactory" evidence that a

_____

(. . . continued)
lifetime lease or right of first refusal was found to exist. Similarly, because no lifetime lease or right of first refusal exists, we need not address whether the lease agreement is valid for twenty years under SDCL 43-32-2. Finally, we do not address the Leonhardts' claim that the lifetime lease is valid until 2021, since there was no lifetime lease.

lifetime lease and right of first refusal existed along with the terms of those agreements. To the Leonhardts, the statement in Delbert's 2005 Will — "It is my intent that my son, Terry Leonhardt, be given a right of first refusal to purchase any farm land which shall be held by this trust or distributed by this trust to the trust beneficiaries" — and the fact Terry purchased a life insurance policy on Delbert's life, all prove that Delbert and Ellen gave the Leonhardts a right of first refusal. And as evidence that the parties agreed to a lifetime lease, the Leonhardts point to the fact that Terry purchased Delbert's equipment and made long-term and substantial improvements to the property.

[¶17.] From our review of the testimony and evidence, we conclude that the circuit court's findings of fact are not clearly erroneous. The court found that the Leonhardts failed to prove by clear and substantial evidence that there was a meeting of the minds on the oral lifetime lease agreement and the right of first refusal. Contrary to the Leonhardts' insistence, the court did not rely only on Terry's testimony from the divorce trial. The court deemed relevant the fact that before 2011, Delbert and Ellen treated their land as they saw fit, without regard to an alleged lifetime lease or right of first refusal in favor of the Leonhardts. Indeed, the record shows that Delbert twice told Terry he considered leasing part of the farm to others, at one time to Matthew and another time to Terry's brother, Thomas. The court further found that any improvements made by Terry benefited property Delbert did not own, and Terry's equipment purchases and fertilization zones were for Terry's own benefit. The record supports these findings, as Terry testified that he still owns the equipment he purchased and continues to use it to

farm. Terry improved the property he owned (the bigger homestead), placed the grain bin he purchased on property he owned, and, by using fertilization zones, he worked to increase his crop yield, which had no impact on the amount of rent Delbert received from Terry.

[¶18.] Because the court was not clearly erroneous when it concluded that no credible evidence existed to support the existence of a lifetime lease or right of first refusal, we need not reach the statute of fraud issues.

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.