2002 SD 121

ACTION MECHANICAL, INC., a South Dakota Corporation, Plaintiff and Appellee,

v.

The DEADWOOD HISTORIC PRESERVATION COMMISSION; Mitch Peck, d/b/a Temperature Control; Ronald Digges; Dennis Digges; Donna Digges, Pepsi Cola Bottling Company; RC Western Meats; and the State of South Dakota Department of Revenue, Defendants,

and

H & N Electric, Defendant and Appellee,

and

Damon Reel, Donna Wynia, Dwight Thomas, and Randy Beckman, d/b/a Four Square Partnership, a South Dakota General Partnership, Defendants and Third Party Plaintiffs and Appellants,

v.

Iron Horse Inn, Inc., Third Party Defendant.

No. 22160.

Supreme Court of South Dakota.

Argued May 29, 2002.

Decided Oct. 2, 2002.

Barton R. Banks of Banks, Johnson, Colbath, Sumner & Kappelman, Rapid City, South Dakota, Attorneys for appellee Action Mechanical.

Robert A. Martin, Rapid City, South Dakota, Attorney for appellee, H & N Electric.

Brad P. Gordon and Michelle K. Percy of Fuller, Tellinghuisen, Gordon and Percy, Lead, South Dakota, Attorneys for appellants.

GORS, Circuit Judge.

[¶ 1.] Four Square Partnership (Four Square) appeals the judgment of the trial court in favor of Action Mechanical, Inc. (Action Mechanical) and H & N Electric, Inc. (H & N). Four Square claims principles of equity preclude Action Mechanical and H & N from prevailing. We affirm.

## FACTS

[¶ 2.] Action Mechanical is a family owned corporation located in Rapid City, South Dakota. The president of Action Mechanical is Dale Sheesley. H & N, also located in Rapid City, is an electrical contracting corporation. The president of H & N is Harlan Nielsen. Four Square Partnership is a general partnership in Deadwood, South Dakota. The partners

are Damon Reel, Donna Wynia, Dwight Thomas and Randy Beckman.

[¶ 3.] In 1989 Four Square bought a building in Deadwood for $75,000 for use as an auto parts store. The development of Deadwood gambling soon made the area too congested for a retail store. In August 1994, Four Square entered into a lease with Lana Coffman. There were discussions about starting a hotel and casino on Four Square's land. Later in April 1995, a corporation called Iron Horse Inn (Iron Horse) was formed with the intent to start a hotel and casino. Members of the new corporation included Damon Reel (a partner in Four Square), Dale Sheesley (president of Action Mechanical), Harlan Nielsen (president of H & N), Larry Lamb, Lana Coffman and others. Four Square then novated its lease with Coffman and named Iron Horse the new lessee.

[¶ 4.] The lease required Iron Horse to make not less than $200,000 in improvements to the property. The lease also prohibited Iron Horse from allowing liens to attach to the property. Under the lease, Four Square retained the right to post notices of non-liability for labor and materials furnished and the right of approval on all construction plans. Four Square then appointed Iron Horse as its attorney in fact to acquire necessary zoning and building permits.

[¶ 5.] At the first shareholder's meeting of the newly formed corporation, Iron Horse Inn, all shareholders were appointed as directors. Damon Reel was elected treasurer. Lana Coffman was elected president and Larry Lamb was named construction manager. The shareholders also signed the Smith Block Agreement allowing shareholders and investors to contribute cash or services in exchange for stock.

[¶ 6.] After taking over the lease, Iron Horse solicited bids to begin construction on the hotel and casino. Action Mechanical was the low bidder on plumbing and other work in the amount of $339,000.[1] Action Mechanical's president, Sheesley, agreed to a reduction of the bid by $50,000 in exchange for 50,000 shares of stock. H & N agreed to provide electrical services. H & N's president, Nielsen, also agreed that payment for the first $50,000 of electrical work would be in the form of 50,000 shares of stock.

[¶ 7.] As work started on the hotel and casino, Action Mechanical made periodic requests for payment. Iron Horse obtained a low-interest loan through the Deadwood Historical Society in the amount of $250,000. Out of that loan, Action Mechanical was paid $213,800. Iron Horse eventually went into default on this loan and Four Square has since taken it over.

[¶ 8.] Iron Horse was unable to attract more investors to obtain new capital. The corporation was unable to pay its monthly lease payments and, subsequently, Four Square started issuing default notices. However, each time a default notice was issued, Four Square would allow Iron Horse an extension on the project. On four separate occasions, Four Square accepted 15,000 shares of penalty stock in lieu of delinquent rent, which eventually totaled 60,000 shares. Four Square gave Iron Horse a total of nine extensions.

[¶ 9.] By March 28, 1996, the hotel and casino project was 90 percent complete. Everyone involved from Four Square to Iron Horse to Action Mechanical and H & N knew the financial condition of the project was not good. Action Mechanical and H & N felt that if they did not complete their respective work the hotel and casino

---

1. Ultimately Action Mechanical's total bill was $439,390.20.

would not open and they would not get paid.

[¶ 10.] By April 1996 the situation became worse. Four Square stopped granting extensions on the lease agreement. In November, Four Square retook possession of the completed hotel and casino. Ultimately, Action Mechanical and H & N concluded that compensation for their services would not be forthcoming and they both filed respective mechanic's liens which precipitated the current dispute.

[¶ 11.] Action Mechanical sued to foreclose its mechanic's lien and for unjust enrichment. The suit named all parties who claimed an interest in the Iron Horse Inn property. H & N's mechanic's lien was dismissed because it was not filed within 120 days after the date of last service on the project. Following a court trial, Action Mechanical was awarded a judgment against Four Square foreclosing its mechanic's lien and for unjust enrichment in the amount of $174,267.02. The trial court also awarded H & N a judgment against Four Square for unjust enrichment in the amount of $109,259.60. Four Square appeals. We affirm.

## ISSUES

Whether principles of equity preclude the award of judgments to Action Mechanical and H & N.

Whether an agency relationship existed between Four Square and Iron Horse Inn, Inc.

Whether Action Mechanical overstated amounts in the filing of its mechanic's lien.

Whether the trial court erred as a matter of law by awarding personal judgments against the individual partners of Four Square.

## STANDARD OF REVIEW

[¶ 12.] Findings of fact will not be set aside unless they are clearly erroneous. SDCL 15–6–52(a). A finding of fact is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *In re Dokken*, 2000 SD 9, ¶ 10, 604 N.W.2d 487, 490–491. We review a trial court's conclusions of law de novo, giving no deference to the trial court's conclusions. *Osloond v. Osloond*, 2000 SD 46, ¶ 6, 609 N.W.2d 118, 121.

[¶ 13.] Foreclosure of a mechanic's lien is an action in equity. *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794, 798 (Neb.1994); *Schumacher Elec., Inc. v. DeBruyn*, 604 N.W.2d 39, 41 (Iowa 1999); *Dane Const. v. Royal's Wine & Deli*, 192 Mich.App. 287, 480 N.W.2d 343, 345 (Mich.App.Ct.1991). An action to recover for unjust enrichment is an action in equity. *Himrich v. Carpenter*, 1997 SD 116, ¶ 21, 569 N.W.2d 568, 573.

[¶ 14.] This Court's standard of review for cases in equity is abuse of discretion. *Mattson v. Rachetto*, 1999 SD 51, ¶ 9, 591 N.W.2d 814, 817 (citations omitted). " 'We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.' " *Id.* (quoting *Gilkyson v. Wheelchair Express, Inc.*, 1998 SD 45, ¶ 6, 579 N.W.2d 1, 3). *Accord, Dacy v. Gors*, 471 N.W.2d 576, 580 (S.D.1991).

## ANALYSIS

### ISSUE ONE

[¶ 15.] **Whether principles of equity preclude the award of judgments to Action Mechanical and H & N.**

[¶ 16.] Four Square appeals the trial court's award of damages to Action Me-

chanical and H & N. Four Square argues the judgments should be set aside under the equity doctrines of unclean hands and equitable estoppel. The trial court found that Action Mechanical was entitled to a judgment foreclosing its mechanic's lien and based on unjust enrichment. It also found that H & N had failed to perfect its lien, but Four Square would be unjustly enriched if it were allowed to retain the benefits conferred by H & N.

### 1. Mechanic's Lien

[¶ 17.] South Dakota allows persons who provide labor and materials to file mechanic's liens to ensure that they get paid. *See* SDCL ch. 44–9. "The purpose of mechanic's lien laws is to provide security or protection to persons who improve the property of others by furnishing materials and labor." *Lytle v. Morgan,* 270 N.W.2d 359, 361 (S.D.1978) (citations omitted). In South Dakota, a mechanic's lien not only attaches to the actual structure, but to the land upon which the structure is located. *Amert Const. Co. v. Spielman,* 331 N.W.2d 307, 311 (S.D.1983) (citing *Atlas Lumber Co. v. Semmler,* 48 S.D. 541, 205 N.W. 376 (1925)). It also allows owners to protect themselves against the filing of mechanic's liens by posting notices of non-liability.[2]

### 2. Waiver by the Lease

[¶ 18.] The lease provided that the tenant, Iron Horse, would prevent the attachment of any mechanic's lien. However, parties to contracts can waive certain contractual provisions.

> The doctrine of waiver is applicable where one in possession of any right, whether conferred by law or by contract, and with full knowledge of the material facts, does or forbears the doing of something inconsistent with the exercise of the right. To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right.

*Norwest Bank South Dakota v. Venners,* 440 N.W.2d 774, 775 (S.D.1989) (quoting *Subsurfco, Inc. v. B–Y Water Dist.,* 337 N.W.2d 448, 456 (S.D.1983)). In addition, a creditor is not bound by a contractual provision in an agreement to which the creditor is not a party. *See Weaver v. Boortz,* 301 N.W.2d 673 (S.D.1981).

[¶ 19.] Four Square remained the actual owner of the property while Iron Horse was merely a tenant. Four Square knew improvements were being made. Four Square knew that Iron Horse was in a precarious financial situation. After Iron Horse defaulted on the lease by failing to

---

**2.** The following South Dakota statutes apply to mechanic's liens:

44–9–1. Whoever shall, at the request of the owner or the duly authorized agent or representative of the owner, or of any contractor or subcontractor, furnish skill, labor, services, including light, power, or water, equipment, or materials for the improvement, development, or operation of property as hereinafter specified, shall have a first lien thereon and the appurtenances thereto....

44–9–2. When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior encumbrancers or lienors shall be deemed to have authorized such improvements, insofar as to subject their interests to the liens therefor; provided that as against a lessor no lien is given for repairs made by or at the instance of his lessee.

44–9–4. Any person who has not authorized the improvement may protect his interests from such liens by serving upon the persons doing the work or otherwise contributing to such improvement, within five days after knowledge thereof, written notice that the improvement is not being made at his instance, or by posting like notice, and keeping the same posted, in a conspicuous place on the premises.

pay the rent for several months, Four Square granted a series of extensions to Iron Horse. Four Square agreed to take $60,000 worth of penalty stock in lieu of delinquent rent. Four Square permitted Iron Horse to continue to make improvements even after Iron Horse could not pay the rent.

[¶ 20.] Four Square obviously knew Iron Horse could not pay for the improvements if Iron Horse could not even pay the rent. Damon Reel, one of the four general partners in Four Square, was treasurer of Iron Horse and knew its shaky financial condition. Four Square did not post any notice of non-liability as required by SDCL 44-9-4 and did not object to any improvement Iron Horse was making. Therefore, Four Square waived its right to protection under the lease provision preventing the attachment of mechanic's liens.

### 3. Unjust Enrichment

[¶ 21.] "When a party confers a benefit upon another party who accepts [or] acquiesces in that benefit and it is inequitable to receive that benefit without paying therefore, a contract will be implied between the parties." *Amert Const.*, 331 N.W.2d at 310. (citations omitted). For Action Mechanical and H & N to prevail on the claim of unjust enrichment they must show: (1) Four Square received a benefit; (2) Four Square was aware it was receiving a benefit; and, (3) Four Square retained that benefit without reimbursement. *Juttelstad v. Juttelstad*, 1998 SD 121, ¶ 19, 587 N.W.2d 447, 451.

[¶ 22.] The *Amert Const.* case is very similar. In *Amert*, Guy Spielman contracted with Amert Construction to erect a large building to house trucks. *Amert Const.*, 331 N.W.2d at 308. Guy was the son of Cliff and Evelyn Spielman. *Id.* The Spielmans owned the land upon which the building was to be constructed and lived directly across from the site. *Id.* at

308-309. This Court observed that the Spielmans were aware that their son was constructing a trucking business on their land. *Id.* at 310. Spielmans also encouraged the construction of the building by financing a "commitment fee." *Id.* At no time did the Spielmans ask their son or Amert Construction to cease operations. *Id.*

> Interested persons are required to take action rather than remain silent when notified that unauthorized improvements are being made on their real estate or they will be equitably estopped from attacking a mechanic's lien which attaches thereto.

*Id.* (citing *Thorson v. Maxwell Hardware Co.*, 82 S.D. 385, 146 N.W.2d 739 (1966)). This Court held that the Spielmans received a benefit from the improvements and it would be inequitable for them to retain the improvements without paying. An implied contract was formed.

[¶ 23.] Four Square received the benefit of a new hotel and casino on its property. Four Square initially paid approximately $75,000 for the property and took over the $250,000 Iron Horse loan from the Deadwood Historical Society. By the time all the improvements were finished, more than $1,000,000 in improvements had been made and the property was appraised in excess of $800,000.

[¶ 24.] Four Square was aware it was receiving a benefit. The lease required at least $200,000 worth of improvements to be made to the property. Four Square had the right of approval on any improvements made. Four Square never objected to any of the plans or improvements made by Action Mechanical or H & N.

[¶ 25.] Finally, Action Mechanical and H & N were not paid for the work they performed. Action Mechanical provided $439,390.20 worth of services and materials

but received only $213,800 and $50,000 worth of stock. H & N provided materials and services in the amount of $159,259.60 and received no money and only $50,000 in Iron Horse stock. It would be unjust for Four Square to receive an $800,000 hotel and casino for $325,000 while Action Mechanical is left with an unpaid bill of $174,267.02 and H & N is left with an unpaid bill of $109,259.60. The trial court did not abuse its discretion in awarding judgment to Action Mechanical and H & N under the theory of unjust enrichment.

### 4. Unclean Hands

[¶ 26.] " '[H]e who comes into equity must come with clean hands.' " *Miller v. County of Davison*, 452 N.W.2d 119, 121 (S.D.1990) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381, (1945)). A party seeking equity must act fairly and in good faith. *Id.*

[¶ 27.] There was no evidence that Action Mechanical or H & N acted in bad faith. Four Square argues that Action Mechanical and H & N knew that Iron Horse was in dire financial straits because Sheesley and Nielsen were investors and on the board. Four Square submits that since Action Mechanical and H & N knew of the financial problems, they should not have continued to work on credit. One of the general partners in Four Square, Damon Reel, was also on the board of Iron Horse. All parties knew the bad financial condition of Iron Horse. Both Action Mechanical and H & N knew that they would have to finish their respective jobs to enable the hotel and casino to open and start generating income before they would be paid. Four Square encouraged them to finish by taking penalty stock for delinquent rent instead of terminating the lease. Finishing the work was not bad faith on the part of either Action Mechani-

cal or H & N. It was simply a reasonable business decision. Their hands were clean. Therefore, the doctrine of unclean hands does not preclude the judgments in favor of Action Mechanical and H & N.

[¶ 28.] If anyone had unclean hands, it was Four Square which led all of the contractors on by waiving Iron Horse's defaults in rent and by allowing the project to be completed before terminating the lease. Four Square did not object or notify Action Mechanical or H & N. Instead, Four Square waited until the contractors were done with their work and asked to be paid. "Clean hands" is a two-way street.

### 5. Equitable Estoppel

[¶ 29.] Estoppel occurs when one party persuades another party to do something they normally would not have done and they are prejudiced by those actions. *Cooper v. James*, 2001 SD 59, ¶ 16, 627 N.W.2d 784, 789 (citing *L.R. Foy Const. Inc. v. SD State Cement Plant*, 399 N.W.2d 340, 344 (S.D.1987)). The elements of equitable estoppel are set forth in *Taylor v. Tripp*, 330 N.W.2d 542, 545 (S.D. 1983):

> In order to constitute an equitable estoppel ... false representations or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; th[e] representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury. There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence. (quoting *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777, 780–81 (1965)).

The facts do not establish equitable estoppel. There was no false representation or concealment of any material facts by either

Action Mechanical or H & N. Since the first element of equitable estoppel does not exist, there is no need to address the additional elements. Therefore, equitable estoppel does not preclude the judgments in favor of Action Mechanical and H & N.

[¶ 30.] Citing *Voorhees–Jontz Lumber Co. v. Bezek,* 137 Ind.App. 382, 209 N.E.2d 380, 384 (Ind.App.1965), Four Square argues that a lien claimant may be estopped by its conduct. According to *Voorhees–Jontz,* conduct may include positive acts, spoken words and silence when there is a duty to speak. *Id.* In *Arr–Em Plastering Corp.* v. *515 East 85th Street Corp.,* 21 A.D.2d 415, 250 N.Y.S.2d 995 (N.Y.A.D. 1964), cited by Four Square, the court refused to foreclose a mechanic's lien on the basis of equitable estoppel. The owner leased real estate to Brosen Associated, Inc. The lease required Brosen to construct an apartment building on the land. In the lease, Brosen agreed not to allow any mechanic's liens to attach to the property. Brosen hired Gilsen Construction Corporation to build the apartments. Brosen and Gilsen were family corporations owned by the Sens brothers and their father, who were the shareholders and directors of both corporations. Both corporations had the same office and attorney. When Brosen failed to get a loan and could not pay for work on the apartments, Gilsen filed a mechanic's lien. The court held Gilsen was estopped from foreclosing its lien because " 'a single mind and a single will' " directed the activities of the separate legal entities. *Id.* at 997 (quoting *Shelton Holding Corp. v. 150 E. 48th St. Corp.,* 264 N.Y. 339, 344, 191 N.E. 8, 10). Gilsen was estopped because it was held to know about Brosen's agreement not to allow mechanic's liens to be filed.

[¶ 31.] This case is distinguishable. A single mind and a single will did not direct Iron Horse, Action Mechanical and H & N.

In addition, Four Square encouraged Action Mechanical and H & N to continue working by taking penalty stock in lieu of rent when Iron Horse defaulted on several occasions. By taking penalty stock, Four Square was not only accepting the risk of not collecting the rent but also was accepting the risk that Action Mechanical and H & N would not be paid and would file mechanic's liens. Four Square could have stopped the financial hemorrhaging when the rent was not paid. Instead, Four Square led the contractors on by waiving the defaults in return for stock. If anyone should be estopped by conduct, Four Square is the party that encouraged the contractors to continue to put labor and materials into the project by making it look like everyone was in the same boat together.

[¶ 32.] Four Square's apparent sharing of the risk was actually an illusion because there was no risk to Four Square in either event. If Iron Horse was completed and successful, Four Square would have a prosperous tenant and an equity position in a profitable casino. If Iron Horse failed, Four Square could retake possession of the casino. Four Square would win either way. The only ones to lose would be the unpaid contractors. Although Action Mechanical and H & N were also investors, it would be inequitable to estop them from being paid for the labor and materials they supplied beyond their investment. Principles of equity preclude Four Square from receiving an $800,000 casino for a $325,000 investment while Action Mechanical and H & N are left with their unpaid bills.

### ISSUE TWO

[¶ 33.] **Whether an agency relationship existed between Four Square and Iron Horse Inn, Inc.**

[¶ 34.] Four Square claims that no agency relationship existed between it-

self as landowner and Iron Horse as tenant. Such a relationship is a requirement for a mechanic's lien to attach when a tenant contracts for improvements to the land. *See* SDCL 44-9-2. Iron Horse counters that it was a tenant required to make improvements to the property and, therefore, it was an agent of Four Square for the purpose of making the required improvements.

[¶ 35.] Existence of an agency relationship is a fact specific issue. For a mechanic's lien to attach to improvements on the property, an obligation must exist under either an express or implied contract. *See* SDCL 44-9-1. "[T]he mere relationship of lessor and lessee of property neither makes the lessee an authorized agent of the owner nor does it create any privity of contract between the owner and a lien claimant who has contracted with the lessee." *Thorson v. Maxwell Hardware Co.*, 82 S.D. 385, 388, 146 N.W.2d 739, 741 (1966) (citing *Smith v. McCoy*, 58 S.D. 256, 235 N.W. 661 (1931)). However, under certain circumstances a tenant may become an authorized agent of the landowner. *Thorson*, 82 S.D. at 388, 146 N.W.2d at 741.

> [W]here a lease requires or obligates a lessee to make certain improvements the lessee is generally regarded as agent of the owner for that purpose. However, where the lease merely authorized the lessee to make alterations or improvements, the lessee is not ordinarily considered to be the agent of the owner.

*Id.* (citations omitted).

[¶ 36.] The lease agreement provided that the tenant had the following duty to construct:

Article XV. Duty to Construct.

1. Tenant shall, at Tenant's sole cost and expense, remodel or construct or cause to be remodeled or constructed on said premises a motel and gambling casino, or so much thereof as can be constructed by the expenditure of not less than Two Hundred Thousand Dollars ($200,000.00), herein called 'said building project'. In the manner and according to the terms and conditions specified herein.

Four Square required Iron Horse to make substantial improvements under the lease. Four Square appointed Iron Horse as its attorney in fact to obtain necessary building and zoning permits. Under the lease, Four Square also maintained the right to approve in writing all proposed improvements. Four Square never objected to any improvements that were made. Therefore, an agency relationship existed for the mechanic's lien to attach. The trial court's judgment foreclosing the mechanic's lien is affirmed.

## ISSUE THREE

[¶ 37.] **Whether Action Mechanical overstated amounts in the filing of its mechanic's lien.**

[¶ 38.] Four Square argues that Action Mechanical overstated the amount of its mechanic's lien and, because of this overstatement, the lien should be dismissed as a matter of law. Action Mechanical admits that it made some mistakes in calculating the amount of the mechanic's lien. However, the trial court heard testimony on this issue and believed Action Mechanical merely made a mistake and that the overstatement was not intentional.[3]

[¶ 39.] SDCL 44-9-6 provides:

---

3. Action Mechanical conceded that it failed to deduct $50,000 in stock issuance as partial payment for work completed. Also, Action Mechanical admitted that it failed to subtract approximately $400 of work done by a subcontractor on another project. The trial

If the contribution be made under a contract with the owner and for an agreed price, the lien as against him shall be for the sum so agreed upon together with the cost of any additional material or work agreed upon, otherwise, and in all cases as against others than the owner, *it shall be for the reasonable value of the work done,* and of the skill, material, and machinery furnished. (emphasis added).

Not only does the value of the work have to be reasonable, but the amount also has to be proved by the party asserting the lien. SDCL 44–9–40.

[¶ 40.] A mechanic's lien will not be enforced when the lien intentionally and willfully exaggerates the claim. *Ringgenberg v. Wilmsmeyer,* 253 N.W.2d 197, 201 (S.D.1977) (citing *Bohn Mfg. Co. v. Keenan,* 15 S.D. 377, 89 N.W. 1009 (1902)). "A claim is not intentionally or willfully false, however, if the mistakes were honestly made." *Ringgenberg,* 253 N.W.2d at 201 (citing *Wittrock v. Hall,* 51 S.D. 39, 211 N.W. 801 (1927)). If the lien grossly misrepresents the amount, the burden is on the person asserting the lien to prove the mistake was made in good faith. *Ringgenberg,* 253 N.W.2d at 201 (citing *E.S. Gaynor Lumber Co. v. Morrison,* 75 S.D. 132, 60 N.W.2d 83 (1953)).

### 1.  Credit for Stock Issued

[¶ 41.] Four Square claimed Action Mechanical did not credit $50,000 in stock against the mechanic's lien. Sheesley agreed and in his testimony stated that it was merely an oversight and an honest mistake. Accordingly, the trial court reduced the mechanic's lien by $50,000.

court hearing testimony on this issue believed the measures taken by Action Mechanical to

### 2.  Improper Items

[¶ 42.] Four Square claimed that there were numerous items totaling $22,671.23 that should not have been included in the lien. Four Square complained that some of the items were not used in the work at the casino; other items were tools not expended at the casino; some items were not itemized in sufficient detail; and additional items were provided after the last date of service listed in the lien. The trial court heard extensive testimony and reviewed numerous exhibits concerning these claimed overstatements. For example, Sheesley explained that small hand tools could be expended on the job by breaking them, losing them or wearing them out. The trial court was able to assess Sheesley's credibility and resolved the rest of the claimed overstatements against Four Square and in favor of Action Mechanical by deducting only $1,323.18 of the contested $22,671.23.

[¶ 43.] Additionally, the trial court awarded Action Mechanical a judgment based not only on its mechanic's lien, but also on its unjust enrichment claim. Therefore, items that were not sufficiently itemized in the lien or that were provided after the last date of service stated in the lien were still properly included in the judgment based on unjust enrichment.

### 3.  Lien Waivers

[¶ 44.] A lien waiver waives only the portion of the claim which is paid. *Lyons Federal Tr. & Sav. v. Moline Nat.,* 193 Ill.App.3d 108, 140 Ill.Dec. 282, 549 N.E.2d 933, 936 (Ill.App.Ct.1990); *Portland Elec. & Plumbing Co. v. Simpson,* 59 Or.App. 486, 651 P.2d 172, 174 (Or.App. 1982). *See generally Metropolitan Federal Bank v. A.J. Allen,* 477 N.W.2d 668

be bona fide mistakes and adjusted their award accordingly.

(Iowa 1991) (concerning interpretation of lien waivers). Specifically, all doubts about the lien waiver are to be resolved in favor of the lien. *Id.* at 673.

### a. Action Mechanical

[¶ 45.] A contractor may waive the right to file a mechanic's lien. *Peterson Mechanical, Inc. v. Nereson,* 466 N.W.2d 568, 571 (N.D.1991). Lenders typically demand lien waivers before disbursing more proceeds on construction loans to avoid misapplication of funds by contractors who fail to pay suppliers. *See Larson Concrete Co. v. Stroschein,* 353 N.W.2d 354, 361 (S.D.1984) (Fosheim, J., dissenting). Here, Action Mechanical signed a lien waiver for 50,000 shares of stock valued at $50,000. The lien waiver was dated December 29, 1995. At that time, Action Mechanical's unpaid bill was $162,394. Four Square contends Action Mechanical waived the entire $162,394 in exchange for the 50,000 shares of stock.

[¶ 46.] Resorting to the language in the lien waiver shows that it was a partial waiver to the extent of the value of the shares received. The shares were valued at one dollar each making $50,000 for 50,000 shares. The waiver specifically states "said stock being *partial payment* of all demands." Therefore, by its own terms, the waiver only satisfied $50,000 of Action Mechanical's bill, not the entire $162,394 owed at the time.

### b. H & N Electric

[¶ 47.] Four Square also claims a lien waiver signed by H & N on December 29, 1995, in return for $50,000 worth of stock, waived the entire $159,217.60 claim subsequently submitted by H & N. H & N filed its mechanic's lien too late and the court awarded a judgment to H & N based solely on unjust enrichment. The court deducted the $50,000 worth of stock referred to in the lien waiver, leaving H & N with a net judgment of $109,217.60. The lien waiver makes it clear that H & N's claim was only waived to the extent of $50,000 "said stock being *partial payment* of all demands" represented by the stock. The trial court properly deducted only the partial payment.

### ISSUE FOUR

[¶ 48.] **Whether the trial court erred as a matter of law by awarding personal judgments against the individual partners of Four Square.**

[¶ 49.] Four Square asserts that the trial court erred as a matter of law by entering the judgment personally against the partners of Four Square. Iron Horse argues that Four Square did not present this issue to the trial court; therefore, it is not properly before this Court for review. Iron Horse argues further that, even if this Court does review this issue, the partners of Four Square are jointly and severally liable for the obligations of the partnership.

[¶ 50.] The trial court's memorandum decision and findings of fact and conclusions of law did not address this issue. This Court has said "[t]o preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, giving their reasons." *State v. Nelson,* 1998 SD 124, ¶ 7, 587 N.W.2d 439, 443. An issue not raised at the trial court level cannot be raised for the first time on appeal. *Id.*

[¶ 51.] Although it is not necessary to address this issue, South Dakota Law provides that partners are jointly and severally liable for obligations of the partnership. SDCL 48–7A–306 provides:

(a) Except as otherwise provided in subsections (b) and (c), all partners are

liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.

(b) A person admitted as a partner into an existing partnership is not personally liable for any partnership obligation incurred before the person's admission as a partner.

(c) An obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the partnership. A partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or so acting as a partner. This subsection applies notwithstanding anything inconsistent in the partnership agreement that existed immediately before the vote required to become a limited liability partnership under § 48–7A–1001(b).

Four Square is a general partnership. The partners of Four Square are jointly and severally liable for the debts of the partnership. Therefore, the trial court has the authority to name the individual partners personally liable. *See* SDCL 48–7A–306. Accordingly, it was not error for the trial court to award personal judgments against the individual partners of Four Square on the unjust enrichment claims. The judgment foreclosing the mechanic's lien is a judgment against the property and is not a personal judgment against the individual partners of Four Square.

## CONCLUSION

[¶ 52.] The trial court is affirmed.

[¶ 53.] GILBERTSON, Chief Justice, and SABERS and ZINTER, Justices, and WILBER, Circuit Judge, concur.

[¶ 54.] GORS, Circuit Judge, for AMUNDSON, Justice, disqualified.

[¶ 55.] WILBUR, Circuit Judge for KONENKAMP, Justice, disqualified.