#24931, #24941-aff in pt, rev in pt & rem-SLZ
**2009 SD 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| W.J. BACHMAN MECHANICAL SHEETMETAL COMPANY, INC., | Plaintiff, |
| PAR GOLF CONSTRUCTION, | Plaintiff and Appellee, |
| v. | |
| WAL-MART REAL ESTATE BUSINESS TRUST; BODELL CONSTRUCTION COMPANY, INC. (Intervenor) | Defendants, Third Party Plaintiffs and Appellants, |
| and FRONTIER MECHANICAL, INC.; DALSIN, INC. d/b/a M.J. DALSIN; and SPEARFISH EXCAVATING, INC., | Defendants and Third Party Plaintiffs, |
| v. | |
| WAL-MART STORES, INC., | Third-Party Defendant, and Appellants, |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and BODELL CONSTRUCTION COMPANY, INC., | Defendants and Appellants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WARREN G. JOHNSON
Judge

* * * *

ARGUED ON FEBRUARY 18, 2009

OPINION FILED **04/08/09**

* * * *

TIMOTHY R. JOHNS of
Johns & Kosel, Prof. LLC
Lead, South Dakota                              Attorneys for appellee.

SCOTT SUMNER
BARTON R. BANKS of
Banks, Johnson, Colbath,
  Sumner & Kappelman, PLLC
Rapid City, South Dakota                        Attorneys for appellants.

#24931, #24941

ZINTER, Justice

[¶1.]          A subcontractor sued a property owner seeking enforcement of a mechanic's lien, or in the alternative, a claim under the theory of unjust enrichment.  The circuit court awarded the subcontractor a judgment enforcing the portion of the mechanic's lien that was properly itemized and a judgment for the remainder of the claim on the theory of unjust enrichment.  The property owner, general contractor, and its bonding company appeal from those judgments and the award of attorney fees.  We affirm in part, reverse in part, and remand.

*Facts and Procedural History*

[¶2.]          Bodell Construction Company, Inc., entered into contract with Wal-Mart Stores, Inc. (Wal-Mart Stores) to build a Wal-Mart Supercenter in Spearfish, South Dakota.  Wal-Mart Real Estate Business Trust (Wal-Mart Trust), a separate entity from Wal-Mart Stores, owned the property.

[¶3.]          Bodell subsequently entered into a $291,245.87 subcontract with Par Golf, a landscaping contractor, for the purpose of installing plantings and an irrigation system on the project.  The subcontract contained an arbitration clause, which provided:

> In the event of any dispute between [Bodell] and [Par Golf] covering the scope of work, the dispute shall be settled in the manner provided by the contract documents.  If none be provided, or if there arises any dispute concerning matters in connection with this Agreement, and without the scope of the work, then such disputes shall be settled by a ruling of a board of arbitration[.]

[¶4.]          Par Golf began work on the project in September 2004.  Before Par Golf finished its work, Bodell authorized change orders for: the installation of an 18-

-1-

inch strip of sod in the curb/gutter areas; an additional island planter; and a temporary irrigation system. The change order regarding sod made no mention of watering.[1] Further, Bodell requested Par Golf to provide labor, materials, and equipment for watering new seed on another portion of the project. This included the use of Par Golf's water truck and laborers. In a letter dated June 24, 2005, Par Golf informed Bodell that Par Golf did not have watering in its bid, and Par Golf, therefore, inquired of Bodell whether Par Golf would be paid extra for the watering. Bodell's project manager wrote "OK" behind the request and added his initials. Par Golf subsequently provided all of these items.

[¶5.]       Pursuant to the subcontract, Par Golf had seeded the west end of a detention pond in the spring of 2005. A subsequent rain flooded the area and washed out most of the topsoil. The flooding occurred because a spillway had been improperly constructed by another contractor. At Bodell's instructions, Par Golf reseeded the area in June 2005, but Bodell would not authorize additional topsoil. Bodell later contended that Par Golf's seeding did not result in the uniform stand of grass required by the contract specifications. Bodell therefore spent $17,814.90[2] to satisfy the grass requirement, which involved hiring another contractor to sod the area.

---

1.    The subcontract did not include sod, but stated that "[s]od will be addressed by change order if required."

2.    This amount is disputed.

[¶6.] Following Par Golf's completion of the project in August 2005, Bodell requested Par Golf to return to repair some damage to the irrigation system caused by vandalism. Par Golf performed this work on September 23 and 24, 2005.

[¶7.] Bodell subsequently paid Par Golf $279,220, which was the subcontract amount, less a retainage. Par Golf, however, contended that $64,560.30 remained due and owing for its work. This amount included compensation for labor and materials for sodding, watering, temporary irrigation, the additional planter, sprinkler repair, and the retainage. Bodell refused to pay.

[¶8.] Following failed negotiations, Par Golf filed a mechanic's lien on January 17, 2006, against Wal-Mart Trust in the amount of $64,560.30. This filing was more than 120 days after Par Golf had completed the project in August 2005, but was within 120 days of Par Golf's September 23-24, 2005, return to repair the vandalism damage to the irrigation system.

[¶9.] Following commencement of this suit against Wal-Mart Trust to enforce the mechanic's lien, Bodell moved to intervene. It also moved to dismiss based upon the arbitration clause. The circuit court heard the motions, allowed intervention, and denied Bodell's motion to dismiss. Par Golf subsequently amended its complaint, adding Bodell and Travelers[3] as defendants. Par Golf also added an alternative unjust enrichment claim against Wal-Mart Trust for any portions of Par Golf's mechanic's lien claim that might be determined to be invalid.

---

3. Pursuant to the Bodell-Wal-Mart Stores contract, Bodell had obtained a bond from Travelers Casualty and Surety Company of America (Travelers) to satisfy the claim and release the lien.

Wal-Mart Trust, Bodell, and Travelers (Defendants) answered and again moved to dismiss based upon the arbitration clause. The circuit court denied Defendants' motion.

[¶10.]      Following trial, the circuit court found that Par Golf had filed its lien within 120 days of when it last performed work on the property (the September 23-24 vandalism repair work). The court further found that although almost seventy percent of Par Golf's mechanic's lien was concededly not itemized, $20,252.52 was itemized. Accordingly, the court entered a mechanic's lien judgment against Travelers for $20,252.52. With respect to the action for unjust enrichment, the circuit court found that although Wal-Mart *Stores* had paid Bodell on their contract, Wal-Mart *Trust* would be "unjustly enriched if allowed to retain the benefits of [Par Golf's] extra work [and retainages] without payment to Par Golf." The court, therefore, entered judgment against Wal-Mart Trust for the balance of Par Golf's claim ($44,370.78). Finally, the circuit court denied Wal-Mart Trust's request for attorney fees in defending the mechanic's lien claim and awarded Par Golf $12,500 in attorney fees for its prosecution of the mechanic's lien.[4]

[¶11.]      Defendants appeal, raising the following issues: (1) whether the action should have been dismissed for failure to arbitrate; (2) whether Par Golf's lien was timely; (3) whether Par Golf's lien was sufficiently itemized; and, to the extent that it was, whether a partially itemized mechanic's lien may be enforced; (4) whether

---

4.      The court denied the balance of Par Golf's attorney fees because there was no statute or agreement allowing the recovery of attorney fees on the claim of unjust enrichment.

Par Golf may recover from Wal-Mart Trust on the theory of unjust enrichment; (5) whether Bodell was entitled to offsets against Par Golf's claims; and (6) whether the circuit court abused its discretion in awarding Par Golf attorney fees. By notice of review, Par Golf raises one protective issue: if this Court disallows any portion of the mechanic's lien, whether Par Golf should be permitted to recover the disallowed portion under the theory of unjust enrichment. Par Golf has also moved this Court for appellate attorney fees.

*Decision*

*Issue I: Arbitration*

[¶12.]    "[T]he construction and legal effect of a written [arbitration] contract are to be determined by the court as a question of law except where the meaning of the language depends upon disputed extrinsic evidence." Flandreau Public Sch. Dist. No. 50-3 v. G.A. Johnson Const., Inc., 2005 SD 87, ¶7, 701 NW2d 430, 434. "We review legal questions concerning arbitration agreements de novo." *Id.* (citing First Options of Chicago, Inc. v. Kaplan, 514 US 938, 947-48, 115 SCt 1920, 1926, 131 LEd2d 985, 996 (1995)). "A circuit court's factual findings supporting its [arbitration] decision, however, are reviewed under the clearly erroneous standard of review." Masteller v. Champion Home Builders Co., 2006 SD 90, ¶9, 723 NW2d 561, 563-64.

[¶13.]    The circuit court concluded that the arbitration clause in the Par Golf-Bodell subcontract did not require Par Golf to arbitrate with Wal-Mart Trust before suing that property owner to enforce the mechanic's lien. The circuit court also

concluded that Bodell, the only defendant with a contractual arbitration clause,

waived its right to assert that clause in this litigation. The circuit court stated:

> The arbitration provision in the subcontract does not preclude
> Par Golf from proceeding against the landowner. [Further,]
> Bodell agreed to diligently seek from Wal-Mart all sums owing
> to Par Golf. There is no evidence of any efforts. On the contrary
> Bodell, Wal-Mart and Travelers are united in their efforts to
> defeat Par Golf's claim for payment. Bodell waived its right to
> compel Par Golf to arbitrate the claims.

[¶14.] Before addressing Defendants' appeal of these rulings, we address Par

Golf's assertion that Defendants waived the right to challenge the circuit court's

arbitration decision. Par Golf points out that although Bodell sought to enforce the

arbitration clause in two related lawsuits,[5] those cases have not been appealed. Par

Golf further contends that Bodell failed to sufficiently raise the failure to arbitrate

issue in this case. Defendants respond that they did not waive the arbitration issue

because they attempted to enforce the arbitration provision in this litigation on two

occasions. We agree with the Defendants.

[¶15.] Bodell formally moved to dismiss in October 2006, arguing that the

subcontract required arbitration. The court heard the motion and decided the issue

at a November 2, 2006 motions hearing. Furthermore, when Par Golf amended its

complaint, Defendants answered and again moved to dismiss for failure to

arbitrate. Ultimately, the circuit court expressed its reasoning for denying the

---

5. Par Golf notes that Bodell moved to compel arbitration in two other, separate
   actions (Par Golf Const. v. Bodell Const. Co. (Lawrence County Civil Action
   07-439)) and Bodell Const. Co. v. Grant Noonkester, dba Par Golf Const. and
   Par Golf Const. Inc. (Lawrence County Civil Action 07-438).

motion in a written decision. The record reflects that Defendants preserved this issue for appeal by raising it before the circuit court.

[¶16.] With respect to the merits of the arbitration issue, the parties do not specifically address the circuit court's joinder/waiver analysis. Instead, Par Golf points out that it had no arbitration agreement with Wal-Mart Trust, the property owner and party Par Golf sued. Therefore, Par Golf argues that even though it was contractually obligated to arbitrate with Bodell over disagreements arising from the subcontract, the arbitration provision in the subcontract with Bodell did not obligate Par Golf to arbitrate before asserting mechanic's lien and unjust enrichment claims against Wal-Mart Trust. Apparently conceding that Par Golf had no direct contractual duty to arbitrate with Wal-Mart Trust, Defendants argue that a property owner should be able to assert against the subcontractor any defense (including arbitration) that the general contractor could assert against the subcontractor.

[¶17.] We decline to consider Defendants' assignment of defenses argument. We do so because, even if Wal-Mart Trust were entitled to assert Bodell's defenses against Par Golf, Defendants have failed to cite authority suggesting that this right includes the "defense" of arbitration. More specifically, Defendants have submitted no authority indicating that a subcontractor, who has an arbitration clause with its general contractor but no contract to arbitrate with the property owner, must

nevertheless arbitrate before pursuing mechanic's lien and unjust enrichment claims against the owner.[6]

[¶18.] This failure to cite authority gives us significant cause for concern in light of "the underlying principle that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Flandreau Public School*, 2005 SD 87, ¶10, 701 NW2d at 435 (citing AT&T Tech., Inc. v. Commc'n Workers of Am., 475 US 643, 648, 106 SCt 1415, 1418, 89 LEd2d 648 (1986)). Further, Defendants have failed to identify how Par Golf could have obtained relief on its mechanic's lien and unjust enrichment claims against Wal-Mart Trust in an arbitral forum only involving Bodell. Under those circumstances arbitration is generally not enforced. *See* Franke v. Poly-

---

6.    Although Defendants cite numerous cases for a general assignment of defense argument, arbitration is unique and it was not the "defense" considered in any of Defendants' cases except Oakdale Park, Ltd. v. Byrd, 346 So2d 648 (FlaCtApp 1977). Further, *Oakdale Park* is distinguishable. *Oakdale Park* is distinguishable because that arbitration clause was in the contract between the property owner and the mechanic's lien claimant. Therefore, there was a contractual agreement to arbitrate. Further, the Florida Court of Appeals recognized that if the jurisdictional time for filing a mechanic's lien were about to expire, a subcontractor would have the right to pursue mechanic's lien foreclosure. *Id*. at 649-50. The Florida court finally adopted a sister court's reasoning that its ruling "should not be deemed as an attempt to oust the trial court of its jurisdiction over the lien foreclosure. Instead, the operation of both the Arbitration Code and the Mechanic's Lien Law is interdependent and compatible." *Id*. at 649 (citation omitted).

Defendants' reliance on Burgi v. Rudgers, 108 NW 253 (SD 1906), is also misplaced. First, arbitration was not the "defense" at issue in *Burgi*. Second, this Court acknowledged that although the general contractor's substantive defenses may be asserted by the owner, "[t]hey do not require the subcontractor to exhaust his remedies against the contractor before proceeding against the property." *Id*. at 254. Therefore, the *Burgi* Court concluded that a subcontractor may pursue a mechanic's lien claim.

America Med. and Dental Benefits Plan, 555 F3d 656, 658 (8thCir 2009) (concluding that "arbitration agreements are to be enforced unless a party can show that it will not be able to vindicate its rights in the arbitral forum") (quoting Faber v. Menard, Inc., 367 F3d 1048, 1052 (8thCir 2004)). In light of these principles and the absence of any authority supporting Defendants' argument, we decline to consider whether a general contractor may assign to the property owner the general contractor-subcontractor's contractual agreement to arbitrate. *See* Hart v. Miller, 2000 SD 53, ¶45, 609 NW2d 138, 149 (concluding that the failure to submit authority on an issue constitutes a waiver of the argument on appeal).

*Issue II: Whether Par Golf's Lien Was Timely*

[¶19.] The circuit court concluded that Par Golf's lien was filed within 120 days of its last performance of work on the project. There are no disputes of fact regarding the completion of work, Par Golf's return to the project, and the date of filing the lien. Therefore, this issue presents a question of law and we review the circuit court's conclusions of law *de novo*. Hanson v. Vermillion Sch. Dist. No. 13-1, 2007 SD 9, ¶24, 727 NW2d 459, 467.

[¶20.] There is no dispute that Par Golf completed its work in August 2005, and filed its mechanic's lien on January 17, 2006. Therefore, unless the time for filing was extended, Par Golf's lien claim was untimely because it was not filed within 120 days of completion of work. *See* SDCL 44-9-16 (providing that a lien must be filed within 120 days "after doing the last of such work, or furnishing the last item of such skill, services, material, or machinery"). *See also* F.H. Peavey & Co. v. Whitman, 82 SD 367, 369, 146 NW2d 365, 366 (1966) (providing that a

mechanic's lien "absolutely terminates unless such filing is made within the prescribed time"). Par Golf contends that its filing was extended because it returned to the project on September 23-24, 2005, pursuant to Bodell's request, to repair the irrigation system, which had been damaged by vandalism.

[¶21.]    Defendants disagree, arguing that this repair work did not extend the time for filing a mechanic's lien. Defendants rely on *Thorson v. Pfeifer,* 82 SD 313, 316, 145 NW2d 438, 439-40 (SD 1996). *Thorson* adopted the rule that:

> [A]fter the installation of fixtures, machinery, or attachments in a building, services in the form of examination or regulation of, or *repairs* to, such fixtures, machinery, or attachments, performed by the seller or the one making the installation, *should not be regarded as a part of the act of sale or installation,* so as to make the time within which to file a mechanic's lien based on such original act run from the time of performance of such additional services.

*Id*. (emphasis added).

[¶22.]    The circuit court acknowledged this rule, but concluded that Par Golf's repair work extended the time to file the lien. The court reasoned that although Par Golf's return to the project involved repair work, it was not unsolicited, trifling, or done for the purpose of extending the time to file a lien. The court stated:

> Par Golf's lien was filed within 120 days of the last item of work performed on the property. This was repair work required by Bodell and/or Wal-Mart. It did not involve unsolicited or trifling work performed for the purpose of extending the period of limitation for filing a lien claim.

Although we agree that the requested repair work was requested and was not trifling or performed for the purpose of extending the period of limitation, we disagree that this repair extended the time to file the lien.

-10-

[¶23.]    As previously noted, *Thorson* adopted the general rule that once a project is completed, repair work "should not be regarded as a part of the act of sale or installation" when computing the time to file a mechanic's lien. 82 SD at 316, 145 NW2d at 439-40. Further, in an earlier case, we explained that when the contractor returns to a project, in order "for the mechanic's lien to include all of the services provided by [the contractor] on the contract, the [latest] work . . . would have to be part of the [contractor's] continuing obligation under the contract." Wefel v. Harold J. Westin and Assoc., Inc., 329 NW2d 624, 626-27 (SD 1983).[7]

---

7.    This Court also listed many examples of returns to the worksite that do not extend the time for filing the lien:

> Several times this court has addressed whether supplies or services were part of a continuing obligation under a contract. In several of these cases, we have held that the 120-day period cannot be extended by a return to the worksite. In *Thorson v. Pfeifer,* 82 SD 313, 145 NW2d 438 (1966), where a heating subcontractor returned voluntarily over three months after installation to inspect and winterize the unit, this court held that the 120-day filing period ran from installation and not the voluntary service call. Similarly, in *Big Sioux Lumber Co. v. Miller,* 57 SD 506, 234 NW 31 (1930), a contractor returned over two years after construction of a building to strengthen it. There, this court refused to permit the contractor's statement filed within ninety days of that visit to relate back to the original construction contract. Also, in *F.H. Peavey & Company v. Whitman,* 82 SD 367, 146 NW2d 365 (1966), where a materialman furnished adhesive to glue loose shingles blown up by high winds, this court held that the subsequently filed mechanic's lien did not attach to materials furnished a year earlier under a contract to build plaintiff's house. Most recently, in *McLaughlin Elec. Supply v. Am. Empire Ins.,* 269 NW2d 766 (SD 1978), we refused, for purposes of the 120-day period, to allow a contractor to count the period from a return to worksite to determine whether the work was completed and whether the workmen picked up their tools.

(continued . . .)

[¶24.]     In this case, the repair work did not extend the time for filing because, even if Par Golf's repair was solicited and non-trifling, the repair was not a part of Par Golf's continuing obligation under the contract for which it sought a lien.  On the contrary, the repair was requested and performed only because of a fortuitous and independent act of vandalism that arose after Par Golf had completed its work under its subcontract.  Because Par Golf had no continuing obligation under the subcontract to repair the vandalism, the circuit court erred in concluding that the requested repair extended Par Golf's time to file its lien.  Because Par Golf's repair work did not extend the time to file the lien for work performed pursuant to the subcontract, only that portion of Par Golf's lien claim for the September 23-24 repair work ($1,245) was timely.  We reverse the remainder of the court's $20,252.52 judgment.

*Issue III:   Lien Itemization*

[¶25.]     Because we have concluded that Par Golf did not timely file its mechanic's lien with respect to its work before the September 23-24 repair, we need only determine whether Par Golf properly itemized its lien for the repair work, a claim of $1,245.

[¶26.]     SDCL 44-9-16(7) requires "[a]n itemized statement of the account upon which the lien is claimed."  While this statutory language is construed liberally, the lien claimant must substantially comply with its requirements.  Crescent Elec. Supply Co. v. Nerison, 89 SD 203, 232 NW2d 76 (1975).  Substantial compliance is

_____

(. . . continued)
     *Wefel,* 329 NW2d at 626-27.

required to protect others with an interest in the property from fraud and imposition. Ringgenberg v. Wilmsmeyer, 253 NW2d 197 (SD 1977). "Failure to sufficiently itemize the account renders the lien invalid." R&L Supply, Ltd. v. Evangelical Lutheran Good Samaritan Soc'y, 462 NW2d 515, 519 (SD 1990). The test is whether the itemization provided sufficient detail "to notify an ordinarily intelligent and careful person that work was actually accomplished on the property in question." H&R Plumbing & Heating, Inc. v. Fed. Deposit Ins. Corp., 406 NW2d 151, 153 (SD 1987); *see also Ringgenberg*, 253 NW2d 197 (SD 1977). As noted in *R&L Supply*, "a lien statement which list[s] the destination of the materials, quantity of each item, together with a description of the item and its price" constitutes sufficient itemization. 462 NW2d at 519; *see also H&R Plumbing*, 406 NW2d at 153 (providing that sufficient detail includes a description of "the type of work done and materials used by the subcontractor").

[¶27.]        In this case, the circuit court concluded that Par Golf's lien for the repair work was sufficiently itemized:

> Par Golf itemized the repairs to the irrigation system including a $200.00 mobilization fee, $145.00 for material and 20 hours labor at $45.00 per hour, for a total of $1,245.00. The information is sufficient to notify an ordinary, intelligent and careful person of the details of the claim.

Par Golf also included the dates this work was provided. We conclude that Par Golf's itemization was sufficiently detailed "to notify an ordinarily intelligent and careful person that work was actually accomplished on the property in question." *H&R Plumbing*, 406 NW2d at 153.

[¶28.] Defendants, however, argue that if a mechanic's lien is not sufficiently itemized to the *full* extent of the claim, the lien may not be imposed even for those portions that are sufficiently itemized. Because Defendants have not supported this argument with any authority, we decline to consider this issue. The failure to submit supporting authority constitutes a waiver of the argument. *Hart*, 2000 SD 53, ¶45, 609 NW2d at 149. We affirm the award of a mechanic's lien in the amount of $1,245.

### Issue IV: Unjust Enrichment

[¶29.] An action for unjust enrichment is an action in equity. Himrich v. Carpenter, 1997 SD 116, ¶21, 569 NW2d 568, 573. "This Court's standard of review . . . is abuse of discretion." Action Mech., Inc. v. Deadwood Historic Pres. Comm'n, 2002 SD 121, ¶14, 652 NW2d 742, 748. "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." Edinger v. Edinger, 2006 SD 103, ¶8, 724 NW2d 852, 855 (citation omitted).

[¶30.] The circuit court entered judgment against Wal-Mart Trust on the unjust enrichment claim in the amount of $44,370.78, which was the portion of Par Golf's total outstanding bill that had not been allowed as a mechanic's lien. The award included: $12,025.78 in retainages; $3,072 relating to the change order for sod; and $29,210.00 for additional watering charges that Par Golf contended were extras not included in its original bid and subcontract.

[¶31.] On appeal Defendants note that Bodell was paid in full under the Wal-Mart Stores-Bodell contract. Therefore, Defendants argue that Wal-Mart

Trust fully paid for all improvements and Wal-Mart Trust could not have been unjustly enriched as a matter of law. Defendants note that several states have held that an owner cannot be unjustly enriched by retaining the benefits of work performed by subcontractors where the owner has paid the general contractor in full. *See e.g.* County Asphalt Paving Co., Inc. v. Mosley Const., Inc., 239 SW3d 704 (MoCtApp 2007); SLR Plumbing and Sewer, Inc. v. Turk, 757 NE2d 193 (IndCtApp 2001); Joest Vibratech, Inc. v. N. Star Steel Co., 109 FSupp2d 746 (ND Ohio 2000); Moore v. Henley, 969 SW2d 266 (MoCtApp 1998); Breckenridge Mat. Co. v. Allied Home Corp., 950 SW2d 340 (MoCtApp 1997); Columbia Wholesale Co., Inc. v. Scudder May N.V., 312 SC 259, 440 SE2d 129 (SC 1994); Sundance Mech. & Util. Corp. v. Atlas, 880 P2d 861 (NM 1994); Seegers v. Sprague, 70 Wis2d 997, 236 NW2d 227 (1975); Rogers v. Whitson, 228 CalCtApp2d 662 (CalAppDist1 1964); Cohen v. Delmart Drive-In Theatre, 46 Del 427, 84 A2d 597 (DelSuperCt 1951).

[¶32.]     We need not consider Defendants' request to apply that rule in this case, however, because even though Wal-Mart Stores may have paid Bodell under their agreement, Wal-Mart Trust is the owner of this property and there is no evidence that Wal-Mart Trust paid anything for the additional improvements to its property.[8]  Because there is no evidence that Wal-Mart Trust paid Bodell anything,

---

8.     At oral argument, Defendants argued that Par Golf failed to sustain its trial burden of raising and establishing a distinction between Wal-Mart Trust as the owner and Wal-Mart Stores as an entity not a part of Wal-Mart Trust. The record, however, reflects that Wal-Mart Trust was treated as a distinct legal owner from the initial pleadings to the circuit court's memorandum opinion, and in the appellate briefs filed with this Court. We decline to redefine Wal-Mart's business structure at this point in appellate review. Moreover, it is the Defendants that have raised this issue by requesting this

(continued . . .)

we decline to consider Defendants' proposed unjust enrichment rule from cases involving a property owner's payment for the subcontractor's improvements through payment of the general contractor.[9]

[¶33.]    We do, however, address Defendants' factual argument that the most significant "extra" sought (watering) was actually included in Par Golf's subcontract. In response to this argument, Par Golf's principal testified that watering was an extra expressly excluded by its bid. Although Par Golf did not introduce that written bid into evidence, Par Golf's June 24, 2005 letter confirmed that it had told Bodell that Par Golf "did not have watering in our bid." The letter then inquired of Bodell if Par Golf would be paid extra for the watering and for the water truck. Bodell's project manager wrote "OK" behind the request and added his initials.[10] Thus, while Defendants argue that the watering was expressly required

_____

(. . . continued)

Court to apply a non-restitution rule in cases where the "owner" has paid for the improvements. Therefore, it was Defendants' burden to establish the absence of an ownership distinction between Wal-Mart Stores and Wal-Mart Trust, and Defendants failed to satisfy that burden.

9.    We acknowledge Defendants' point in oral argument that in many situations payment of the general contract necessarily includes payment for all work contemplated by the general contract whether performed by the general contractor or a subcontractor. Therefore, in many situations, full payment of the general contract may include payment of the item at issue: the only dispute being whether the general contractor or the subcontractor must absorb the cost of the improvement. As previously indicated, however, this record does not reflect that Wal-Mart Trust, the owner, paid Bodell anything. Therefore, we need not address this issue.

10.    In light of this evidence of a post-subcontract agreement, we also reject Defendants' argument that project's general specifications incorporated in the subcontract (requiring watering) could not have been modified by a pre-contract bid.

under the general specifications that were incorporated in the subcontract, there was contrary evidence of a writing confirming a post-subcontract agreement that Bodell would pay for these items as "extras." In light of this dispute in the evidence, we find no clear error in the circuit court's finding that Par Golf's unjust enrichment claims were for extra work not contemplated by the original subcontract.

[¶34.] In sum, we find no clear error in the circuit court's finding that Wal-Mart Stores' payment to Bodell did not include the "extras" for which unjust enrichment was awarded. We conclude that, because the circuit court found that Wal-Mart Trust had not paid the general contractor for the items at issue, Defendants' cases are inapplicable. We affirm the circuit court's unjust enrichment award.

*Issue V: Was Bodell Entitled to an Offset against Par Golf's Claims*

[¶35.] Bodell claims that it is entitled to offsets against Par Golf's claims for alleged failures of Par Golf to perform in accordance with the subcontract. *See* Hoaas v. Griffiths, 2006 SD 27, ¶20, 714 NW2d 61, 67 (providing that the right of an offset allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the "absurdity of making A pay B when B owes A"). At trial, Bodell sought to recover approximately $18,000, largely relating to the materials and labor needed to water and sod the detention pond. The circuit court disagreed, concluding that Par Golf was not obligated to provide the watering. The circuit court's memorandum decision noted:

> Change order No. 1 pertained to the sod but made no mention of irrigation. Par Golf warned Bodell in several letters that this was non-irrigated sod and will not live. Par Golf installed the sod but did no watering. Soon Bodell was complaining that the

-17-

> sod was shrinking and the grass was not growing. Bodell maintained that the specifications called for watering of the sod. Par Golf countered that watering was not included in the change order so it would be an extra. The plans contemplated that the area now to be sodded were originally to be planted in native grasses. There was no irrigation water then available in these curb and gutter areas.

We agree with Par Golf that there was sufficient evidence for the circuit court to find that Bodell was responsible for any losses suffered because of the failure to water this sod. Because Defendants have not established that this finding was clearly erroneous, they failed to establish entitlement to an offset.

[¶36.] Regarding the sodding, the record reflects that the need for sod at the detention pond arose after a 2005 spring flood washed out Par Golf's grass seeding and Par Golf was not responsible for that damage. Bodell, however, argues that Par Golf's reseeding was inadequate to meet contract specifications, thus requiring sodding. The circuit court, however, found:

> Bodell has sought a set-off for additional sod it had installed and watering it had done after Par Golf left the job site. Whether the sodding, for which Bodell now claims an offset[,] was necessary[ ]has not been established by a preponderance of the evidence.

We affirm this factual finding because Defendants have not identified any evidence suggesting that the circuit court was clearly erroneous.

*Issue VI: Attorney Fees*

[¶37.] Both Wal-Mart Trust and Par Golf moved for attorney fees under SDCL 44-9-42. That statute provides that in mechanic's lien cases, a circuit court "shall have authority in its discretion to allow such attorney's fees . . . and other expenses as to it may seem warranted and necessary according to the circumstances

of each case[.]" SDCL 44-9-42. The circuit court denied Wal-Mart Trust's application and granted $12,500 of Par Golf's $28,114.79 attorney fees.

[¶38.] Defendants argue that the circuit court abused its discretion in awarding Par Golf this amount, when nearly two-thirds, approximately seventy percent ($44,379.78), of Par Golf's claimed lien was invalid. Defendants argue that Par Golf's award essentially included fees relating to the unjust enrichment claim.

[¶39.] In its findings of fact, the court noted that Defendants did not object to the reasonableness of the hourly rates charged, nor did they argue that the amount of work was unnecessary in the prosecution of the mechanic's lien claim and the defense of Bodell's setoff claim. Further, the circuit court's findings of fact and conclusions of law reflect that, in awarding Par Golf less than half of what they requested in attorney fees: "the sum of $12,500 in attorney fees was reasonable and necessary to prosecute Par Golf's claim *on the lien foreclosure*[.]" Therefore, we see no abuse of discretion in the circuit court's analysis. Nevertheless, in light of our reversal of most of the remaining claimed mechanic's lien, we remand this issue for reconsideration.

[¶40.] Defendants also contend that the circuit court abused its discretion when it denied Wal-Mart Trust's motion for attorney fees in defense of the lien foreclosure. Defendants note that Wal-Mart Trust had secured a bond from Travelers that released the lien from Wal-Mart Trust's property and fully secured Par Golf's claim, yet Par Golf refused to dismiss Wal-Mart Trust from the case. Defendants argue that under these circumstances, Wal-Mart Trust should not have been forced to bear the cost of defending Par Golf's mechanic's lien claims. In light

of our reversal of the mechanic's lien claim in substantial part, we also remand this issue for reconsideration.

*Notice of Review*

[¶41.]      Par Golf filed a protective notice of review in the event we invalidated any portion of its mechanic's lien award. Par Golf requests this Court to modify "the judgment allowing for a damage award of $64,623.30 plus interest on . . . [u]njust enrichment, or in the alternative, that we remand to the trial court the question of what portion of the remaining $20,252.52 [disallowed as a mechanic's lien] plus interest should be awarded[.]" Because we have concluded that a major portion of the mechanic's lien relating to the original project was not timely, we remand for a consideration of Par Golf's unjust enrichment claim.

*Appellate Attorney Fees*

[¶42.]      Par Golf seeks appellate attorney fees in the amount of $4,759.40 under SDCL 44-9-42 and 15-26A-87.3. Par Golf indicates that this amount equals one-half of the total fees incurred in appealing the case. Par Golf argues that it should be allowed $4,759.40 for the time spent on the issue regarding foreclosure of the mechanic's lien. Defendants object, arguing that Par Golf failed to provide "any meaningful detail in its submission" and did not "make any attempt to separate the fees and charges relating to its lien claims from those relating to its other claims on appeal." Defendants contend that Par Golf "simply claims an entitlement to one-half of all of its fees." Our review of Par Golf's statement of attorney fees confirms Defendants' objections. Additionally, in light of our reversal of most of Par Golf's

claimed mechanic's lien, we deny Par Golf's motion for appellate attorney fees under SDCL 44-9-42.

*Conclusion*

[¶43.]     We decline to review the circuit court's conclusion that Par Golf was not required to arbitrate before pursuing mechanic's lien and unjust enrichment claims against Wal-Mart Trust. We reverse that portion of the circuit court's mechanic's lien award that was not timely filed, and we affirm the portion of the court's mechanic's lien award for the September 23 and 24, 2005 repair work. We affirm the unjust enrichment award and the circuit court's decision that Bodell is not entitled to offsets. We remand the matter for reconsideration of trial attorney fees and Par Golf's notice of review issue regarding further entitlement to unjust enrichment.

[¶44.]     GILBERTSON, Chief Justice, and MEIERHENRY, Justice, and SABERS, Retired Justice, and BARNETT, Circuit Judge, concur.

[¶45.]     BARNETT, Circuit Judge, sitting for KONENKAMP, Justice, disqualified.